## Wytheville.

### BROWN v. LYNCHBURG NATIONAL BANK.

#### June 10, 1909.

1. BANKS—*Pass-Books and Vouchers—Duty of Depositor—Duty of Bank.*—It is the duty of a bank depositor to examine within a reasonable time and with ordinary care the account rendered in his pass-book, and the vouchers returned by the bank to him, and to report any errors discovered without unreasonable delay. The examination need not be so minute as to exclude any possibility of error, but it should be made in good faith and with ordinary diligence, and such care should be used as the circumstances of the particular case require. It is likewise the duty of the bank to keep careful and faithful accounts with its depositors, to scrutinize checks, and to exercise proper care and skill to prevent or to discover fraud.

2. BANKS—*Pass-Books—False Entries—Negligence of Depositor—Case at Bar—Estoppel—Question for Jury.*—The evidence in the case at bar makes out a case peculiarly for the determination of a jury under proper instructions from the court, and it was error for the trial court to have sustained the demurrer to the evidence tendered by the defendant. The plaintiff had been a depositor in the bank for many years and relied upon the bank to keep his account correctly, but, for three years, one or more of the employees of the bank had been engaged in systematically defrauding him, and had successfully concealed their frauds by making and rendering to him false accounts. Whether or not he was estopped to deny the correctness of the accounts as rendered by the bank from time to time should, under the circumstances, have been left to the jury.

Error to a judgment of the Corporation Court of the city of Lynchburg in an action of assumpsit.   Judgment for the defendant.   Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Harrison & Long,* for the plaintiff in error.

*Wilson & Manson* and *Lee & Howard,* for the defendant in error.

Keith, P., delivered the opinion of the court.

The plaintiff in error brought this action to recover a balance alleged to be due him on a deposit account by the Lynchburg National Bank of $3,066.20. The bank denied its liability, except for the sum of $139.00, which amount it tendered; and as to the residue issue was joined upon the plea of *non assumpsit.* The defendant in error demurred to the evidence, and, the verdict of the jury having been rendered, the court entered judgment for the defendant, and the case is before us upon a writ of error awarded Brown.

The evidence tends to prove that the plaintiff in error had been for many years a depositor with the defendant bank; that beginning with August, 1900, and continuing until December, 1903, an employee or employees of the bank, from time to time, embezzled the funds of the bank and fraudulently entered the amounts so taken against the account of plaintiff in error. It was the custom of the bank to render monthly to plaintiff in error a statement of his account, consisting of his cancelled checks for the past month, a machine-made slip, represented to contain a list of these checks, and a statement showing the totals of debits and credits, and the balance to the credit of plaintiff in error. Brown did not keep a pass book, but relied solely on these statements rendered by the bank. His examination of these statements consisted of seeing that his checks as drawn were returned to him as vouchers, that his signature to the checks was genuine, and that the checks returned corres-

ponded with the stubs from which they were taken, and by verifying the total debits and credits. He did not check the individual checks with the items on the machine-made list of checks, but assumed that the machine-made list of checks corresponded with the checks returned with it, and correctly represented his withdrawals from the bank, and, he did not examine it to see if it contained any item of charge against his account not represented by a check. In the method of examination he pursued, he discovered nothing about the statements of his account returned to him which put him upon notice of any wrong-doing until about the middle of November, 1903, when he received notice of an overcheck. He had received frequently within the past three years notices of overchecks, but had assumed that the bank was keeping his account honestly and correctly. At the time mentioned, however, November, 1903, the amount of the overcheck attracted his attention, and he called for his checks for the current month of November to be sent to him, and upon receiving them he made a critical examination, checking up each check with the machine-made list of checks, and discovered that the checks returned did not correspond with that list; that the list contained more items than there were checks; and that apparently some of his checks had been used as a basis of charge against his account more than once. For example, the machine-made list of checks contained two items of $33.00 and two of $23.75, though he had only drawn one check for each of these amounts. He proceeded to examine his account for several years back, and discovered that false entries had been systematically made from month to month, extending from August, 1900, the false entry always corresponding in amount with some check drawn by him. The sums thus withdrawn from the funds of the bank and fraudulently charged against his account amounted, with interest, to about $3,000. The president of the bank admitted that this money had been stolen by some agent or employee of the bank.

It is difficult to conceive of a fraud more easy of detection

than the one under investigation. As soon as a comparison was made by plaintiff in error between the machine-made slip and the checks which he had drawn, the fraud was discovered; and yet plaintiff in error had for three years accepted the bank's statements without question. If upon this evidence the case had been submitted to the jury and it had found a verdict for the defendant, it could not have been disturbed.

As was said by this court in *Bank of Richmond* v. *Richmond Electric Company,* 106 Va. 347, 56 S. E. 152, "a bank depositor is under obligations to the bank to examine within a reasonable time and with ordinary care the account rendered in the pass book and the vouchers returned by the bank to him, and to report any errors discovered without unreasonable delay. The examination need not be so minute as to exclude any possibility of error, but it should be made in good faith and with ordinary diligence, and such care should be used as is required by the circumstances of the particular case."

In *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96, 29 L. Ed. 811, 6 Sup. Ct. 657, a like doctrine is announced. In that case, "the main dispute," said Mr. Justice Harlan, "is as to the right of the depositor to question the account rendered by the bank, so far as it charges him with certain checks which he signed, but which, before payment, were materially altered by his clerk, without his knowledge or assent." The facts of that case are as follows: Berlin was the confidential clerk of Cooper from January, 1878, to March, 1881, and had the entire management of his office, kept his books, and had full charge of Cooper's account, as agent of Ashburner and Company, with the bank. With the full knowledge of Cooper, Berlin filled up all checks drawn upon that account, entering on the stub of the check book the date and amount of each check, the name of the payee and the purpose for which it was drawn. Pursuant to Cooper's instructions, or in the regular course of business, he filled certain checks between September 11, 1880, and February 13, 1881, which, being signed by Cooper and delivered to him,

were altered by Berlin before they were taken from the office. The teller of the bank testified that the checks, when presented by Berlin were always carefully examined by him as to signature, amount, date and indorsement; and that there was nothing about the checks to excite suspicion or to suggest alteration or erasure.   Upon the checks so altered, Berlin received from the bank the full raised amount, out of which he paid to Cooper or to his use the several amounts for which they were originally drawn, and appropriated the balance to the discharge of gambling debts which he had contracted.   The entries in the check book were made by Berlin and were correct, but he forced the footings of the stubs by making false additions equal to the increase of the altered checks.   Cooper's pass book was written up at the bank in October, 1880, November, 1880, and January, 1881, and balances struck showing the amounts to his credit on those dates.   Upon each occasion, the book was returned with all checks that had been paid subsequent to the previous balancing, including the altered checks.   Across the face of the pass book on the first balancing was written, "62 vouchers returned;" on the second, "79 vouchers returned;" and on the last, "66 vouchers returned."   Each time the pass book was returned with the vouchers, Berlin destroyed such of the checks as he had altered.   Berlin stated that Cooper was in the habit of examining his check book from time to time, and it is clear that the latter knew of these balancings, for he testifies that his account with the bank was balanced from time to time, which was done by the bank writing up the pass book and returning the checks that had been paid by it; that when the pass book was so returned it went to the clerk, Berlin, who then balanced the check book, that being one of the duties imposed upon him; that witness took no part in such balancings, but Berlin generally showed him the vouchers that were returned, because he liked to look at them; but he never gave Berlin any particular instructions so to do.   Cooper testified, also, that he was in the habit of looking over his check book and keeping track of the

balance; and that when he asked Berlin as to the balance his answer agreed with about what he supposed was in the bank. He also knew the object of such balancings, for he testified that he had been a dealer with the bank for upwards of eighteen years, and that he knew it was its custom, as well as the custom of all banks, to balance at intervals the pass books of its depositors and to return the same when balanced, accompanied by the checks drawn by the depositor and charged to the account, as the vouchers of the bank for such payments.   Cooper states that the forgeries were discovered by him about the first or second day of March, 1881.   Berlin having stayed away from the office for a day, he compared his pass book with the stubs of the check book, and ascertained that a certain number of checks appearing on the stubs were not charged against him in his pass book, and did not appear to have been returned by the bank, while others which appeared on the pass book to have been charged against and returned to him did not appear by the stub of the check book to have ever been drawn.   Thereupon, he sent his pass book to the bank to be balanced, and it was balanced on March 2, 1881.   Cooper admits that if on any of the several balancings he had made such examination of his check book and pass book as was done on March 1, 1881, he would have easily discovered that his account had been charged with altered checks; and that for the previous five or ten years he knew of various means adopted by bankers and merchants to prevent the raising or alteration of checks, but he had not employed or used any of them.   Upon one occasion, the date not given, he discovered by adding up the footings of the check book an error, and spoke to Berlin about it.   The latter having replied that it was very seldom he was caught in a mistake, Cooper believed him and looked no further into the matter.

Upon this evidence, the circuit court directed a verdict for the plaintiffs, and the case was carried to the Supreme Court of the United States upon a writ of error.   Mr. Justice Harlan, in his opinion, fully discusses the authorities, and the result of

his investigation is stated in the syllabus as follows: "When a bank depositor sends his pass book to the bank to be written up, it is his duty upon its return, either in person or by duly authorized agent, to examine the account and vouchers returned within a reasonable time, and give to the bank timely notice of any objections thereto. If he fails to do so, he may be estopped from questioning the conclusiveness of the account. If the examination is made by an agent, it must be done in good faith and with ordinary diligence; and where such agent himself commits forgeries which mislead the bank and injure the depositor, the latter is not protected, in the absence of at least reasonable diligence in supervising the conduct of the agent. In this case it was error to direct a verdict for the plaintiffs, as the questions: whether the depositor is estopped, whether the bank exercised due caution before paying the altered checks, and whether a certain check was indorsed in blank or for deposit, are for the jury." Justice Harlan concludes his opinion as follows: "It results from what has been said, that the court erred in peremptorily instructing the jury to find for the plaintiffs. Both causes of action are peculiarly for a jury to determine, under such instructions as may be consistent with the principles announced in this opinion. Whether the plaintiffs are estopped by the negligence of their representative to dispute the correctness of the account as rendered by the bank from time to time, is, in view of all the circumstances of this case, a mixed question of law and fact. As there is, under the evidence, fair ground for controversy as to whether the officers of the bank exercised due caution before paying the altered checks, and whether the depositor omitted, to the injury of the bank, to do what ordinary care and prudence required of him, it was not proper to withdraw the case from the jury."

In the case of *Brown* v. *Bank,* the bank demurred to the evidence, and the judgment upon the demurrer was rendered in its favor. Here too, as in the case of *Bank* v. *Morgan,* the

cause of action was one peculiarly for the jury to determine, and we think that the court erred in taking it from the jury.

It is true that the fraud was perpetrated in this case in a very crude and simple manner. It is not a case of forgery, which if cleverly performed is difficult of detection, but consisted merely in making a double charge for the amount represented by a single check, which could have been detected, as the petition for the writ of error admits, by adding up the amounts on the stubs of the check book and comparing the total with the total showed on the statement of "checks as per list." As a matter of fact, as soon as plaintiff in error did this, the fraud was discovered. But, on the other hand, it is to be remembered that the bank is the debtor of the depositor, and that it is under obligation to keep careful and faithful accounts with its depositors, to scrutinize checks, and to exercise proper care and skill to prevent or to discover fraud.

It is true that the employee of the bank, in the perpetration of a fraud upon a depositor, is not the agent of the bank; but in this case, for three years, one or more employees of the bank had engaged in systematically defrauding the plaintiff in error, and in the concealment of those frauds by making and rendering false accounts.

The court is of opinion that, looking to the long course of dealing between the parties, the numerous occasions upon which the money of the bank had been abstracted and charged to the account of plaintiff in error, to the monthly accounts (more than thirty in number) rendered by the bank to plaintiff in error through its employees, to the probability that such fraudulent practices could not have been perpetrated and successfully concealed through so long a period unless participated in by more than one of the employees of the bank, and regard being had to the relations which exist between a bank and its depositors, and to the reciprocal duties owing from one to the other, it

was a case for a jury to determine, under proper instructions from the court.

The judgment of the corporation court must, therefore, be reversed, and this court will proceed to enter such judgment as that court should have rendered.

*Reversed.*