# Richmond

## First National Bank of Lexington v. Isaac Weinberg, et al.

November 14, 1935.

Present, All the Justices.

The opinion states the case.

*J. M. Perry* and *G. D. Letcher*, for the plaintiff in error.

*Hugh A. White* and *Leo Weinberg,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

At the May, 1926, term of the Circuit Court of Rockbridge county, Isaac Weinberg brought an action against the First National Bank of Lexington to recover the sum of $14,595.21. The notice of motion alleges:

"The above mentioned net balance of $14,595.21 due to the undersigned has been caused and brought about by the errors, discrepancies and falsifying the accounts of

the undersigned with the said First National Bank of Lexington, Virginia, by its agents, servants, cashiers, assistant cashiers, bookkeepers or tellers, or all of such agents and servants combined."

At the same term of court the bank brought an action against Isaac and Rebecca Weinberg to recover the principal sum of $14,006.24, claimed by virtue of two notes executed by the Weinbergs. To the action of Weinberg the bank pleaded the general issue, and to the action of the bank Weinberg pleaded as an offset the sum claimed by him.

At the September, 1926, term of court the following order was entered in the Weinberg case:

"This day came the parties by their attorneys, and it appearing that this case involves voluminous matters of account between the plaintiff and the defendant, which renders it impracticable to try the case at this time before a jury, by consent of both the plaintiff and the defendant by their attorneys, it is ordered that this cause stand committed to Master Commissioner M. W. Paxton, Jr., who will take, state and report as follows:

"1st. He will report a statement of the accounts between the parties stating in detail as far as possible, all of the accounts and claims existing between the parties, whether by open account, note or otherwise.

"2nd. And he will report what, if anything, the plaintiff is entitled to recover.

"And each party shall furnish to the commissioner any books, papers or records which may be required of him or it by the commissioner or the other party, and subject to the prior examination by the other party or his attorney.

"It appearing to the court that there are two chancery causes pending in this court and before said commissioner under the style of *Isaac Weinberg* v. *First National Bank of Lexington,* and *Isaac Weinberg* v. *Rockbridge Steam Laundry, &c.,* and also one law suit pending in this court under the style of *First National Bank of Lexington,*

*Virginia* v. *Isaac Weinberg and Mrs. Isaac Weinberg,* it is ordered that so far as relevant and subject to objection, the evidence or any part thereof, or copy thereof, taken in any of the said causes may be read in this cause at the written request of either party, or by the commissioner * * *."

The companion order entered in the bank case directed the commissioner to report as follows:

"1st. He will report a statement of the accounts between the parties stating in detail, as far as possible, all of the accounts and claims existing between the parties, whether by open account, note or otherwise.

"2nd. The said commissioner will report what, if anything, is due the plaintiff, and what may be due the defendant, or either of them, if anything, under the pleadings and issues in this cause."

No question was made before the commissioner as to the debt due by the Weinbergs. The amount of the claim of Weinberg against the bank constituted the question presented for the determination of the commissioner. To support his claim of offset, Weinberg relied upon his own testimony and the testimony of E. B. Knatz, an expert accountant, and filed before the commissioner certain checks and charges, his bank deposit books and adding machine slips returned to him by the bank, and the bank's records of Weinberg's account.

After an extended and painstaking hearing, as evidenced by the voluminous record and the excellently prepared report, the commissioner found in favor of Weinberg in the sum of $7,398.98. To this report the bank filed eleven exceptions. While the report is challenged from different angles, the crux of the complaint is that the finding of the commissioner is without legal evidence to support it.

The trial court confirmed the report and definitely fixed the amount of Weinberg's recovery at the sum above named, conditioned, however, upon the proviso that he had not waived his right to a recovery by reason of his

alleged negligence in failing to examine his bank statements and report the errors to the bank within a reasonable time. That action of the court is assigned as error.

The evidence before the commissioner tends to prove that for a number of years Isaac Weinberg had been a depositor with the bank; that his deposits for several years just prior to the defalcations complained of amounted to over a hundred thousand dollars annually; that he was a business associate of the teller in the bank, who, during the period from September 4, 1920, to November 18, 1923, embezzled a large sum of money and fraudulently entered a part of the amounts so embezzled against the account of Weinberg; that Weinberg, though a successful merchant, was uneducated and relied implicitly upon the teller in both his private dealings and in his dealings with the bank; that when he received his usual statements from the bank he would take the checks and charges, as shown on the adding machine slip, and check these against whatever charges were made up and shown on his check book stub, but that he never re-added the adding machine slips. By way of parenthesis, it will be stated that some of the adding machine slips were a yard in length and contained a multitude of items.

That the teller was guilty of embezzlement is not controverted. It is the conclusion of Knatz, the accountant (which conclusion was adopted by the commissioner and approved by the court), that the method adopted by the teller to carry on his peculations was to put down one or more false items at the top of the adding machine list of charges, then turn the slip down a space and begin with the real charges, tearing off the false ones. In this way the slips, as returned, showed only the true items, but the total included the false items. It was also shown that the teller had exclusive charge of the bank ledger containing Weinberg's account and that the ledger was so manipulated as to correspond to the statements furnished Weinberg. It must be conceded that the case of Weinberg must, in a large measure, rest upon the testimony of

Knatz. Though subjected to a rigid examination by the eminent counsel for the bank and his evidence severely criticized in support of the exceptions to the report, both the court and the commissioner who heard him testify placed the stamp of approval upon his evidence. In the report of Commissioner Paxton this tribute is paid Knatz: "Accountant Knatz appears to be an experienced accountant and to have done his work carefully and accurately." This finding of the commissioner dispels any idea of collusion between Knatz and Weinberg. However, it is further shown in the report that the commissioner did not rely solely on the testimony of Knatz. In reply to the argument that the evidence introduced was insufficient, the commissioner said:

"Now it seems to me that the important items for the plaintiff are the adding machine slips returned with his checks and charges by the bank. Without these, I should say any account was incomplete and subject to grave chances of error. For that reason, I have checked over every bank adding machine slip which has been re-added by the accountant and shows an error in addition. I have taken the accountant's re-adding as correct which seems to be unquestioned, re-adding myself only several of the slips. I have also gone over every check in the record, checking them against the seven periods of the erroneous adding machine slips. I find them nearly complete, there being a check for nearly every item on the machine lists.

"Knatz, in his evidence in the bank case, testifies that there was a check for each item on the machine lists, and also other checks and charges of Weinberg not listed on the adding machine tape. I have checked them all to find some checks paid during these seven periods and not included in the items on the tapes, but find none. I do not know what Knatz meant by this answer unless it is that there are checks in periods with no tapes, and that Weinberg in his account has been charged in some way and the bank given credit for them in his accounting. I find no checks over the whole period as submitted in evidence,

not listed on the tapes, that is, on the seven erroneous tapes, and paid during the seven periods. I do find items on the adding machine lists with no check or note or charge slip to show for them. They are mainly renewed notes."

■ In the face of the commissioner's conclusion, approved by the court, we would not be justified in reversing the judgment, unless it clearly appears that the commissioner has erred. The consistent holding of this court has been to attach great weight to the findings of a special commissioner whose report has been confirmed by the trial court. In support of this doctrine, only a few of the many decisions need be cited.

In *Stimpson* v. *Bishop,* 82 Va. 190, 204, it is said:

"The testimony is voluminous, and shows that the accounts between the parties, which have been running over a period of many years, are in great confusion. The cause was referred to a special commissioner, who, after laborious investigation with the parties and witnesses before him, settled the accounts as best he could, and his report was confirmed. In such a case, the appellate court ought not to disturb the action of the commissioner and of the lower court, unless there be palpable error, and none such appears in this case."

In *Venable* v. *McNutt,* 154 Va. 597, 603, 153 S. E. 709, 711, Mr. Justice Browning said:

"The report of a commissioner sustained by the trial court, when the evidence was taken in his presence, is entitled to great weight and should not be disturbed upon appeal unless its conclusions are clearly unsupported by the evidence."

In *Boston* v. *Shackelford,* 162 Va. 733, 175 S. E. 625, 631, Mr. Justice Holt spoke last upon the subject, as follows:

"There is sharp conflict in evidence as to the depreciation in value from May 30, 1930, to August 13, 1930. The commissioner who heard the testimony was of opinion that substantial depreciation had been shown. His judg-

ment the court confirmed and in this conflict it is our duty to accept it."

While it is fundamental, as held by Chief Justice Prentis in *Clevinger* v. *County School Board,* 139 Va. 444, 124 S. E. 440, that this court cannot avoid the duty of weighing the evidence when its sufficiency is fairly challenged, that doctrine does not relieve the complaining party of the burden of showing error. To raise a doubt is not sufficient. Absolute certainty is rarely attainable in court proceedings, especially where there is a conflict of evidence or the element of fraud is one of the paramount issues.

In *Southern Ry. Co.* v. *McMenamin,* 113 Va. 121, 129, 73 S. E. 980, 982, this court cites 1 Sedgwick on Damages, section 170, for the following statement:

"Absolute certainty in such cases is not attainable, and is not required. The injured party cannot be denied the right to recover because he cannot show the exact amount with certainty, although he is ready to show, to the satisfaction of the jury, that he has suffered large damage. Where, from the nature of the case, the amount of damage cannot be ascertained with certainty, there is no objection to placing before the jury all the facts and circumstances of the case having any tendency to show damages, or their probable amount, so as to enable them to make the most intelligible and probable estimate which the nature of the case will admit."

In our opinion no palpable error has been shown, and the first assignment of error is without merit.

The next assignment of error involves the action of the court, upon the motion of Weinberg, in awarding a trial by jury of this issue: "Whether or not Isaac Weinberg is estopped to deny the correctness of the accounts rendered him by the First National Bank of Lexington * * * and because of negligence, barred of a recovery from said bank, the sum of seven thousand three hundred and ninety-eight and ninety-eight hundredths Dollars, with interest thereon from May 3, 1926."

The contention of the bank is that by consenting to the order entered on September 25, 1926, heretofore set forth, Weinberg agreed to submit the determination of all matters to the court. Counsel for Weinberg contend that the language in the order: "It appearing that this case involves voluminous matters of account between the plaintiff and defendant, which renders it impracticable to try the case at this time before a jury," was not a waiver of a jury trial, but a reservation to try the question of liability after the report of the commissioner upon the question of the amount due.

■ Section 6012 of the Code provides in specific terms for the trial of issues both of law and fact by the court. So far as we are advised, it is the usual practice, when a case is submitted to the court for determination, to state in the order of submission that all questions are to be determined by the court. Such an omission, however, does not conclude the question of a determination by the court when it appears that neither plaintiff nor defendant demanded a trial by jury. *Collier* v. *Hiden,* 120 Va. 453, 91 S. E. 630.

■ The trial court was of opinion that the action of Weinberg was a reservation of rights and not a waiver of same, and that the submission of the question of Weinberg's alleged negligence to the jury for determination was ruled by the decision of this court in *Brown* v. *Lynchburg Nat. Bank,* 109 Va. 530, 64 S. E. 950, 17 Ann. Cas. 119, which cited with approval the case of *Leather Manufacturers' Nat. Bank* v. *Morgan,* 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811.

In our opinion the trial court correctly construed the order and under the holding of this court in *Brown* v. *Lynchburg Nat. Bank* the question of negligence was properly submitted to the jury. We are not unmindful of the reliance of the bank upon the alleged errors committed by the court in giving and refusing instructions, but in view of our conclusion that the case, upon the

merits, is with Weinberg and has been correctly decided by the trial court, it is unnecessary to discuss the remaining assignments which do not go to the merits of the case.

*Affirmed.*

HOLT, J., dissenting.

The correctness or incorrectness of a judgment is sometimes susceptible of demonstration. Given courses and distances of a boundary there is no room for difference of opinion as to acreage. Other cases can not with this certainty be settled, to be weighed is intelligence of witnesses, their candor and their opportunities for observation, their interests and the sufficiency or the insufficiency of data at hand. These are matters to be balanced, and it is upon the theory of probabilities that conclusions are reached. Above all they should not shock the conscience of the court, for there is a limit to judicial credulity. Fairminded men may at times differ as to defects in a chain of reasoning when they should not as to the decision reached. Something is wrong with any reckoning which puts the sea-going ship in the middle of Wisconsin.

The defendant in error is and has been for many years one of the leading merchants in Lexington, intelligent and successful. He claims that within four years from September, 1919, to November, 1923, his bank account failed by $14,595.21, to show the true balance to his credit, and that during this time he had no inkling of its manipulation.

It was in that period balanced twenty-four times and statements given to him. He was then a constant borrower from the bank. Intelligent men, certainly successful business men, do not do business in this way. It is possible that the errors now claimed may have been overlooked, but it is not probable. Judgments should not rest upon bare possibilities. That such an error in these circumstances could have escaped his attention is unbelievable.

One Leo Sheridan, a bookkeeper, who was associated

with Mr. Weinberg in sundry outside enterprises, was an embezzler to the extent of two or three hundred thousand dollars, and his manipulation of this bank's affairs has produced endless confusion out of which trouble comes.

Not without interest is the fact that these offsets claimed about balance this claimant's notes executed to the bank.

My conclusion is that this error of $14,000, if there was in fact such an error, could not have escaped the depositor's notice. If no such error was made he can not recover. If there was such an error and if he knew it, his complaint now comes too late. For these reasons I am constrained to dissent.