# Staunton

HOPE MORRISON, ET ALS. V. WALTER L. MORRISON, ET ALS.

October 9, 1939.

Record No. 2095.

Present, All the Justices.

60

*Meade & Talbott,* for the appellants.

*W. R. Ashburn,* for the appellees.

BROWNING, J., delivered the opinion of the court.

This is a suit in chancery to settle the accounts of Carrie B. Morrison, administratrix of the estate of Edgar H. Morrison, deceased, to settle the estate of her intestate, to subject the same to the payment of the alleged indebedness due the complainant, and if the personal estate of the decedent be insufficient to pay the debts then to ascertain the relationship of the indebtedness, as to its payment, to the real estate of which he died seized and possessed, located in the states of Virginia and North Carolina.

Carrie B. Morrison, who was Carrie B. Williams, and Edgar H. Morrison, who was a retired physician, were married in May, 1929. Both of them had been married before. They were persons of considerable means. She was worth some seventy thousand dollars, which consisted of securities which she inherited from her father and which she had managed and controlled for a number of years previous to her marriage to Dr. Morrison. Dr. Morrison's estate consisted principally of real estate located in Virginia and North Carolina. His Virginia real estate was quite valuable and is located in the town of Virginia Beach, consisting of houses and lots used for both residential and business purposes. He was a resident of Virginia Beach. His North Carolina property consisted chiefly of real estate. He owned two large farms in that state and a residence in the town of Tarboro, which he occupied for a portion of

each year. His personal property at each of his places of abode consisted mainly of household effects.

Though they had married, each of them continued to manage and control his or her separate estate. At the time of their marriage, Dr. Morrison was in debt to the extent of about $18,000.00. He relied upon his rentals, which were estimated at from $12,000.00 to $17,000.00, for his sustenance and to pay his interest and his indebtedness. His wife and himself were cognizant of the financial condition of each other and enjoyed the mutual confidence of each other.

Dr. Morrison wished to improve his Virginia Beach properties for the two-fold purpose of their preservation and an increase of their rental values. He needed considerable money to accomplish this. The amount necessary was between $15,000.00 and $20,000.00. Some of Mrs. Morrison's securities were in the form of U. S. Liberty Loan Bonds, which yielded her less than five per cent interest. He suggested that it would be to their mutual interest to dispose of some of these securities and for her to lend him the money which he needed, for which he would pay her six per cent and when he finished paying his indebtedness to the Merchants and Mechanics Savings Bank of Norfolk, Virginia, he would pay the principal due her, and if anything happened to him before this occurred she would be paid out of his estate. This we have from Mrs. Morrison's testimony and incidents appearing in the record to be presently noted.

Dr. Morrison's indebtedness to Mrs. Morrison amounted to $15,578.00, with accruals of interest. It consisted of six separate loans as follows:

No. 1—June 30, 1929 ....................$ 1,000.00
No. 2—November 29, 1929 ................ 4,000.00
No. 3—February 3, 1930 ................ 5,000.00
No. 4—March 28, 1930 .................. 250.00
No. 5—May 6, 1930 ·..................... 5,000.00
No. 6—December 24, 1930 ................ 328.00

Total........................$ 15,578.00

Dr. Morrison died on April 2, 1936, intestate. At that time he had reduced his indebtedness to the bank to $6,-500.00. When he secured the original loan of $20,000.00 from the bank he executed a deed of trust on certain of his Virginia Beach property securing notes or bonds, which he placed with the bank as collateral security for his indebtedness to it.

Dr. Morrison had no children by either marriage. He left as his heirs at law his wife, Carrie B. Morrison, who, as plaintiff, filed the bill refererred to, and two brothers and two sisters, who, with Carrie B. Morrison, administratrix of Edgar H. Morrison, deceased, were defendants. Certain of the defendants, by their answer, denied that the estate of Edgar H. Morrison was indebted to Mrs. Morrison at all and alleged that her claim, if valid, was barred by the statute of limitations and they denied the right of the Virginia court to charge the North Carolina real estate with the payment of any part of Dr. Morrison's reputed indebtedness and alleged that the amount due to the bank by said estate and the amount alleged to be due to Mrs. Morrison represented money which had been expended by him in improving and enhancing the value of the Virginia real estate and its payment should be enforced exclusively out of such real estate.

A decree was entered in the suit referring it to N. T. Green, Esq., Special Master, to enquire and report as to the matters in issue, which have been referred to. Witnesses offered by the conflicting parties in interest were examined before the Special Master, and their testimony was transcribed and forms a part of the record.

The Special Master, who is a distinguished lawyer, presented a learned and exhaustive report determinative of the questions submitted to him, and other allied matters, which were suggested by his legal acumen.

The refutation of the plaintiff's claim against the estate by the contesting defendants was their laboring oar. It was the subject of their chief attack, which was based on the contention that the requirements of section 6209 of the

Code of Virginia had not been met. That section provides, in part, that in a suit against one who, from any cause, is incapable of testifying, or by or against the personal representative of one so incapable of testifying no judgment shall be rendered in favor of the plaintiff founded on his uncorroborated testimony.

They urge that the testimony of Mrs. Morrison to prove the indebtedness due her and its mode and time of payment is uncorroborated and, therefore, she being the only witness who testified as to its existence, it has not been established. The Special Master reported that the complainant's claim, with the accrued interest, is a valid and subsisting charge against Dr. Morrison's estate.

It is well to say here that the chancellor confirmed the report in all respects.

■ This court has said time and again that the conclusions of a Special Master, or Commissioner, based upon testimony taken before him, approved by the trial court or chancellor, will not be overruled or reversed unless it plainly appears that error has been committed. *First Nat. Bank of Lexington* v. *Weinberg,* 165 Va. 433, 182 S. E. 250; *Boston* v. *Shackelford,* 162 Va. 733, 175 S. E. 625.

The annotator's note on this subject in Michie's Digest, Vol. 8, page 568, is this:

"Report is Entitled to Great Weight on Appeal.—The rule is that where questions purely of fact are referred to a commissioner to be reported upon, the findings of the commissioner, while not as conclusive as the verdict of a jury, will be given great weight, and should be sustained unless it plainly appears that they are not warranted by any reasonable view of the evidence, operates with peculiar force in an appellate court where the findings of the commissioner have been approved and sustained by the decree of the inferior court."

Mrs. Morrison's testimony as to each of the loans made to her husband is corroborated by her cancelled checks for the precise amounts, less in two instances the interest which had accrued on Liberty Loan bonds, which was retained by

her, the dates of the said cancelled checks corresponding to the bank's record of the credit of the amounts to Dr. Morrison's account, and in the instances of checks which were drawn by Mrs. Morrison, and charged to her account, there was a perfect correspondence of dates. In the two cases in which she sold her bonds, the details of the transactions are testified to by the investment banker, who made the sales, and there is also a correspondence of the dates with the checks and bank notations.

We quote here the statement of the Special Master, couched in apt language:

"Each item of that indebtedness is traced to the complainant as the source of the money and to Doctor Morrison as the recipient of the same from her. The deposits to Doctor Morrison's bank accounts coincide in times and amounts with withdrawals of like amounts from the property of the complainant with startling and impressive emphasis."

In addition to what we have said on the subject, we note that on March 28, 1936, Dr. Morrison executed his last will in which appears this direction to the executor: " * * pay all my just debts, *including debts due my wife, Carrie Biggs Morrison,* as soon after my death as may be reasonably convenient in the administration of my estate * * * ." (Italics supplied.)

It is true that the will, made five days before his death, was never found, but the fact of its execution and its contents were proven by Mrs. Cannon, one of the subscribing witnesses, and by Dr. Morrison's attorney, who wrote the will and who was directed by the testator to incorporate therein the fact of his indebtedness to his wife in the terms employed.

We digress for a moment to say, in justice to counsel, that he felt impelled to testify on account of circumstances which he enumerated, though he fully realized "the impropriety of appearing in any cause in the dual role of advocate and witness." It was embarrassing to him, but he felt that there was a necessity for it. We simply call attention to Canon 19

of the rules for the integration of the Virginia State Bar, under the heading "The Canons of Ethics."

In the case of *Davies* v. *Silvey,* 148 Va. 132, 138 S. E. 513, this court held that circumstances present in that case and very like those that have been enumerated in this case were sufficient to corroborate the plaintiff's testimony as to the existence of the indebtedness claimed to be due him.

In the case referred to, the case of *Burton's Ex'r* v. *Manson,* 142 Va. 500, 129 S. E. 356, is cited with approval and is quoted as follows: "Nothing that was said in *Merchants Supply Company* v. *Hughes'* [Ex'rs], 139 Va. 212, 123 S. E. 355, was intended to decide that the witness to be corroborated must be corroborated on all material points. The case was decided on its own peculiar facts, and it was not intended to state any rule of universal application."

The fact that Mrs. Morrison accompanied her husband on nearly every occasion that he went to the bank to attend to his obligation there when it matured, and that he was then reducing his indebtedness and issuing renewal obligations for what remained, is strongly corroborative of her testimony that he would pay his indebtedness to her when that to the bank had been discharged. She testified to this course of conduct, as did the bank official who handled the transactions. Her activities in this respect point to her vigilance in bringing about the condition upon which her husband's promise to pay her was based and was to be effective. Another corroborating circumstance is that during the period covered by her loans to him the work of repairing and putting in order his Virginia Beach properties was in progress.

Again upon this subject we quote from the report of the Special Master:

"But aside from these circumstances it must be remembered that it is not essential that the complainant's testimony should be corroborated on all material points; it is only necessary that corroboration should be on some essential facts and to such an extent as will confirm and strengthen belief in her testimony. The cases of *Burton's*

*Ex'r* v. *Manson,* 142 Va. 500, 129 S. E. 356; *Davies* v. *Silvey,* 148 Va. 132, 138 S. E. 513; *Ratliff* v. *Jewell,* 153 Va. 315, 149 S. E. 409, 67 A. L. R. 1541, so declare the law. The Special Master concludes that the complainant's testimony has been so sufficiently corroborated as to justify its acceptance as true in every respect."

■ In the case of *Parksley National Bank* v. *Parks,* 172 Va. 169, 200 S. E. 629, 634, this court said, through Mr. Justice Spratley:

"Where it is shown that the wife has actually loaned her money to her husband, upon his express contemporaneous promise to repay the loan, she becomes his creditor to the same extent as any other person advancing the money under like circumstances. It is as much the duty of a husband to be just to his wife as to other persons."

■ There can be no question, we think, of the fact that Mrs. Morrison's testimony is amply corroborated.

■ We now come to a discussion of the defense that Mrs. Morrison's debt is barred by the statute of limitations. The statute is inapplicable for the reason that the debt, at the time of the decedent's death, had not become due and payable. No right of action had accrued to her.

■ It was said by this court in the case of *Duncan* v. *Duncan's Adm'x,* 117 Va. 487, 85 S. E. 485:

"Upon the authorities, we think it well settled that upon a demand payable by the debtor at his death, the statute of limitations only begins to run from the happening of that event. See *Banks* v. *Howard,* 117 Ga. 94, 43 S. E. 438; *Gullet* v. *Gullet,* 28 Ind. App. 670, 63 N. E. 782; *Green* v. *Orgain* (Tenn. Ch. App.), 46 S. W. 477; *Cann* v. *Cann's Heirs,* 45 W. Va. 563, 31 S. E. 923; *Stone* v. *Todd,* 49 N. J. L. 274, 8 A. 300; and *Morrissey* v. *Morrissey,* 180 Mass. 480, 62 N. E. 972.

"In the last case it was held that, where the plaintiff had advanced certain sums of money to the defendant's intestate in consideration of the intestate's oral agreement to convey or devise her house to him, and the intestate died without doing so, the plaintiff's right of action to recover the money

paid by him accrued only upon the death of the intestate, and that the statute of limitations ran from that time."

In the case of *Scott's Ex'r* v. *Osborne's Ex'r*, 2 Munf. (16 Va.) 413, a father-in-law promised his son-in-law that if the latter would purchase a certain tract of land he would help him in the payment of the purchase price by letting him have the amount of a certain bond when it was collected. It was held that a right of action did not accrue to the son-in-law upon the promise until the bond was collected and the statute did not begin to run against him until the happening of that event.

See also, the following: *Montana Tonopah Min. Co.* v. *Dunlap*, 196 F. 612; *Cooper* v. *Colson*, 66 N. J. Eq. 328, 58 A. 337, 105 Am. St. Rep. 660, 1 Ann. Cas. 997; *Harrison* v. *Harrison*, 124 Iowa 525, 100 N. W. 344; 37 Corpus Juris, page 818, sec. 169, et seq.

The application of the cases cited becomes apparent when we bear in mind that Dr. Morrison promised to pay his indebtedness to Mrs. Morrison after he had paid his indebtedness to the bank, which he was rapidly doing when death overtook him. Mrs. Morrison kept a constant eye on this feature of the matter, resulting in the reduction of the indebtedness from something like $18,000.00 to $6,500.00.

We come next to a question more difficult of ascertainment and determination. This is because of the conditions which are present. Here the decedent's personal estate, which is primarily the source of debt-paying, is so entirely insufficient to discharge his debts, that the real estate must be looked to for that purpose. The real estate, which is of diverse values, is situated in different states. The largest creditor is the wife of the decedent. Her interests in the real estate result from the marital relation and consist of dower rights, which, of course, are limited to life enjoyment, such rights being different in quantity and extent in the two states. The effect of her duality of status troubled the Special Master and, we think, led to a solution of the problem, which, while unique and ingenious, is unsound, because it deprives the widow of the advantage of being

treated as any other creditor, to which, we think, she is entitled.

We quote from the brief of the appellee, with which we are in accord:

"We think the Special Master has adopted the right principle, that is, proportionate participation to discharge the debts, but has applied an erroneous method of calculation in determining the proportion in which the debt due the complainant is to be satisfied from the assets (the real property) in each state. * * *

"The evidence established that the North Carolina land equalled about thirty per cent of the assets subject to debts, and the Virginia land about seventy per cent thereof, and the said Master so concluded. On this basis he determined that as to the debts due by the decedent * * *, the Federal Estate tax should be discharged thirty per cent by application of the two-thirds interest in the North Carolina land (or by contribution by the heirs to that extent), and seventy per cent by application of the Virginia land. That the remaining $6,500.00 due the Merchants and Mechanics Savings Bank should be discharged either in full from the Virginia property on which it is secured by deed of trust (since this obligation is paramount to the widow's dower in such property), or that she must contribute to its discharge to the extent of $4,456.92, the remaining $2,043.08 being payable by the heirs, of which thirty per cent thereof, or $612.92 should be paid from the North Carolina real estate, and $1,430.16 should be paid from the Virginia real estate. We are unable to find any different or better rule than the one here applied by the Special Master, and take no exception to this conclusion, but as to his method of computing the participation to discharge the $15,578.00 debt due the widow, we think the calculation which he applies * * requires too large a contribution by her to the discharge of the debt as to which she is the creditor, * * * . .

"He thereupon proceeds to apply a rule involving a very intricate and difficult calculation, the result of which will be to require the widow to discharge *more than seventy*

*per cent of the debt due her as creditor.* We submit that as to this debt thirty per cent thereof should be discharged from the two-thirds interest in the North Carolina lands which passes immediately to the heirs subject to decedent's debts (or a contribution should be made by them to that amount), and seventy per cent thereof should be discharged from the two-thirds interest in the Virginia lands which are subject to the claims of creditors, and in which the widow has a life interest subject to such claims, the fee being in the heirs. This of course would be the rule to be applied if the debt were held by any other outside creditor, and we can see no reason to apply a different rule because the widow happens to be also a creditor. By the application of this rule for which we contend, the widow must herself discharge seventy per cent of the debt which she holds, in order to enjoy a life interest in the two-thirds of the Virginia lands, as if she does not discharge it these lands would be sold to satisfy the debt, thereby cutting off the income. In support of our contention we can cite no authorities, but we respectfully submit that equitable principles require the application of the same rule to the widow's claim as creditor that would be applied to the claim of any outside creditor."

We should not permit a mere rule or mathematical calculation to overthrow a disposition which appears to be so consonant with equitable principles. "Rules are good, but principles are better. Rules may contradict, confuse; principles are constant, consistent."

The right of the court to enter the decree complained of is challenged on the ground that it affects real estate which is situated in the state of North Carolina. This is an attack upon the court's jurisdiction. In the case of *Selover, etc., Co.* v. *Walsh,* 226 U. S. 112, 33 S. Ct. 69, 71, 57 L. Ed. 146, there was involved a judgment of the supreme court of Minnesota awarding damages to the defendant in error for a breach by plaintiff in error of an executory contract for the sale of land situated in the state of Colorado. The jurisdiction of the Minnesota court was attacked. The

Supreme Court of the United States, in part, said: "In other words, it is contended that the law of Colorado, the situs of the property, is the law of the contract. The principle is asserted in many ways and with an affluent citation of cases. The principle cannot be contested, but plaintiff in error pushes it too far. Courts in many ways, through action upon or constraint of the person, affect property in other states (*Fall* v. *Eastin*, 215 U. S. 1, 30 S. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.) 924, 17 Ann. Cas. 853), and in the case at bar the action is strictly personal."

"While by means of its power over the person of a party a court of equity may, in a proper case, compel him to act in relation to property not within its jurisdiction, its decree does not operate directly on the property or affect the title, but is made effectual through the coercion of the defendant, as, for instance, by directing a deed to be executed or cancelled by or on behalf of the party. * * * The broad principle which controls is that because the *lex rei sitae* governs, the decree of a court of one jurisdiction cannot itself operate to transfer the title to land in another jurisdiction.

"On the other hand, a matter which concerns real property merely incidentally and which is in reality of a personal nature will not be determined by the local law; * * ." American Jurisprudence, Vol. 11 (Conflict of Laws), Section 30, pages 330, 331.

"A court of equity may entertain jurisdiction of a bill to compel a debtor to disclose his assets in another State and to apply them to the satisfaction of his debts (at least where imprisonment for debt has been abolished): *Mitchell* v. *Bunch,* 2nd Paige Chy. (N. Y.) 606, 22 Am. Dec. 669; but see (*Ex parte Blakes,* 1 Cox Ch. 398); to compel a judgment debtor to convey lands in another state for the benefit of his creditors in such a way as to vest legal title in the grantee; *Bailey* v. *Ryder,* 10 N. Y. 363; and though in a suit to enforce a constructive trust for the creditors and distributees of an estate, the court cannot sell lands situated partly in another state, it can order the constructive

trustee to convey the entire tract to the administrator of the estate to be sold by him under order of the court for the benefit of the creditors and distributees; *Miller* v. *Birdsong*, 7 Baxt. (Tenn.) 531."

See also, *Dickinson* v. *Hoome's Adm'r*, 8 Gratt. (49 Va.) 353.

It is thus perceived that, all parties in interest being before the court, it has jurisdiction of the matters in issue and has the power to adjust the equities between the parties by its decree *in persona.*

The contention that was interposed attacking Mrs. Morrison's rightful ownership of certain articles of personal property failed of establishment. It would serve no needful purpose to say more of this.

We affirm the decree of the chancellor in all respects except that it must be modified as to Mrs. Morrison's debt to the extent that is herein indicated.

*Modified and affirmed.*

HUDGINS, J., dissenting.

The statute of limitations is one of repose, and is dictated by a wise policy, founded upon presumption against him who unreasonably delays the assertion of his demand. The plea of the statute is in the nature of a plea of confession and avoidance. It virtually admits that the alleged claim at one time was due and owing but the lapse of time since its due date bars the right of action.

It appears from the uncontradicted evidence in this case that within less than one year from the date of the marriage of the parties, the wife had transferred to the husband the sum of $15,251. Later, on December 4, 1930, she transferred to her husband an additional sum of $328. All these sums were given to Dr. Morrison more than five years before his death on April 2, 1936. The transfer of property between husband and wife, in the absence of an express agreement to the contrary, is presumed to be a gift. In this case, even if the relation of creditor and debtor was created, the indebtedness appears to be in the nature of an open

account, on which the right of action would be barred after three years. Under these circumstances, the one vital issue raised by the plea is the due date of the alleged obligation. On this decisive issue only one witness, Mrs. Carrie Biggs Morrison, an interested party, testified. She stated that Dr. Morrison promised to pay this obligation "after he had paid the note which he owed at the Merchants & Mechanics Bank, and if anything, happened to him it would come out of his estate." There is no corroboration of this testimony.

The pertinent provisions of Code, section 6209, are: "In an action or suit * * * against * * * administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; * * * ."

The decree in this case, granting Carrie Biggs Morrison a judgment against decedent's estate for the sum of $15,579, is in the teeth of this statute, and is founded on the uncorroborated testimony of an adverse, interested party.

In *Burton's Ex'r* v. *Manson*, 142 Va. 500, 129 S. E. 356, it was said: "The Virginia statute was taken, in part at least, from the statute of New Mexico, which has been construed several times by the Supreme Court of that State.

"In *Gildersleeve* v. *Atkinson*, 6 N. M. 250, 27 P. 477, it was said: 'Corroborative evidence is such evidence as tends in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings testified to by the witness whose evidence is sought to be corroborated, which allegation or issue, if unsupported, would be fatal to the case; and such corroborating evidence must, of itself, without the aid of any other evidence, exhibit its corroborative character by pointing with reasonable certainty to the allegation or issue which it supports, and such evidence will not be material unless the evidence sought to be corroborated itself supports the allegation or the point in issue.'

\*  \*  \*  \*  \*  \*  \*

"The cases cited correctly state the quality of the evidence to be received. It must be corroborative in the sense indicated, in order to be admissible, but there must also be sufficient of this evidence to corroborate. There must be quantity as well as quality."

Chief Justice Prentis, speaking for the court in *Noland Co.* v. *Wagner*, 153 Va. 254, 256, 257, 149 S. E. 478, said: "There seems to be no obscurity in the language of the statute, but its application to particular cases may be sometimes difficult. That a judgment cannot be founded upon the uncorroborated testimony of one who is either a party to the action, or of one who though not a party to the action is interested in its result, is certainly true, but as the facts and circumstances attending each case are always different from the precise facts of another case, it is impossible to frame a general rule which could be universally applied. Corroboration in such cases there must be. The precise nature of the required corroboration or the weight to be given to the corroborating evidence depends upon the facts of each particular case."

There is no conflict in the evidence on this specific point, hence the citation of authority on the question of the weight to be given the finding of fact in a commissioner's report, which is confirmed by the trial court, has no bearing. The question before this court is the application of established legal principles to conceded facts. The testimony of several disinterested witnesses to the effect that the husband and wife were together when some of the money was transferred is no corroboration of the due date of the alleged debt. While it is not necessary that there be corroboration of all material issues, when the decision of the case turns upon one vital issue, as is disclosed in this record, there should be, in my opinion, corroboration of the adverse party on that specific issue.

Complainant in the trial court anticipated that she would not be able to establish the due date of her claim, as she, in her bill, alleged that " * * * if (the debt is) barred (by the statute of limitations) the said decedent, Edgar H.

Morrison, within the period contemplated, executed a new statement in writing agreeing to pay the said debt to your oratrix, and the whole thereof, together with interest thereon, and your oratrix is entitled to collect said debt from the corpus of decedent's estate, and to subject the same in satisfaction of said debt as hereinafter set forth."

The proof of the new promise in writing is a copy of a will that the now attorney for complainant prepared for decedent. It appears that this attorney, after numerous consultations with decedent during the six weeks immediately preceding death, presented a draft of a will that was satisfactory to decedent, and which he duly executed on March 28, 1936, just five days before he died. In this will, this is said: "It is my principal concern to provide for my wife Carrie Biggs Morrison, my sisters, Grace L. Grady and Hope Morrison, and my brother Willard S. Morrison, during the remainder of their several lives, and to that end I give, devise and bequeath all my property, real, personal and mixed, wheresoever situate, to my executor hereinafter named, for the uses and upon the trusts herein stated, to-wit:—First: I direct my executor to pay all my just debts, *including debts due my wife* Carrie Biggs Morrison, as soon after my death as may be reasonably convenient in the administration of my estate according to the directions herein contained." (Italics supplied.)

This paper writing was duly executed as a will, and left in the possession of the decedent, who was then an invalid confined to his bed. No one had access to him but his wife, the nurses in attendance, and his physician. After his death on April 2, 1936, five days after the paper was signed, the will could not be found. Thereafter the beneficiaries named, except the widow, attempted to probate the same as a lost will. Its contents were proven by a copy retained by the attorney. The widow was successful in resisting the probate of this document, on the ground that, under the circumstances proven, the law presumed the document was destroyed by the decedent himself.

In this proceeding the widow now presents the same copy of the will, and contends that that part of the above quotation in italics is sufficient acknowledgment of the debt to toll the statute of limitations.

In *Layman* v. *Layman,* 171 Va. 317, 320, 198 S. E. 923, 925, we said: " * * * it is generally held that a promise sufficient to toll the statute should be made directly to the creditor or some person acting for him, and that declarations or admissions to strangers are insufficient."

In Burks' Pl. and Prac., 3d Ed., 377-8, this is said: "An action cannot be maintained on an undelivered writing or a due bill found in the supposed debtor's papers after his death. Such writing so found is not a sufficient acknowledgment to prevent the bar of the statute."

The document executed as a will was not found among the testator's papers. The judgment of the trial court in the probate proceedings, and the action of this court in refusing the appeal from that decision, established the fact that Edgar H. Morrison died intestate. Mrs. Morrison successfully contended in that proceeding that Dr. Morrison destroyed the paper with the intent to revoke all of its provisions. She cannot now contend that that part of it which was favorable to her was valid, and the part not favorable to her invalid. Whatever declarations or admissions Dr. Morrison may have made to his attorney or set forth in the paper signed by him as a will, such written statements were never intended to be delivered to Mrs. Morrison, or to any person then acting for her.

It is not clear from the majority opinion just what weight, if any, is intended to be given the alleged declaration of the decedent in the writing which was destroyed. It is certainly not a sufficient acknowledgment of the debt to be enforceable as a new promise. It is no corroboration of Mrs. Morrison's testimony as to the due date of the obligation.

The widow, in her complaint against her husband's estate, asked that her debt be declared a "charge" on his North Carolina real property. In accordance with this

request, the trial court entered a decree which, in part, reads as follows: "And as to the debt of $15,578.00 due the complainant Carrie M. Morrison, with interest thereon as fixed in this decree, the Court doth Adjudge and Decree that the North Carolina real estate is chargeable with the proportion thereof to be ascertained and made certain by the following calculation: First, take thirty per cent of the complainant's entire debt and interest; then take one-third of said sum and find the commuted value of complainant widow's dower interest according to section 5133 of the Code of Virginia at her age of forty-five years. Deduct this commuted value dower interest from the ascertained thirty per cent of complainant's entire debt and interest. On the remainder thus arrived at, ascertain the interest for one year and multiply this interest by 11.428 as fixed by section 5133 of the Code of Virginia for the age of forty-five years, the age of the complainant widow. Deduct the result of this last multiplication from the full thirty per cent of the complainant's entire debt and interest, and this last remainder is and is hereby adjudged to be the portion of the debt and interest due the complainant that is to be charged on the North Carolina lands of which Doctor E. H. Morrison died seized and possessed, and said sum is hereby made a charge thereon, the interest of Walter L. Morrison now owned by complainant, being included among the interests so charged, and the Court doth Adjudge and Decree that the charges created by this paragraph may be hereinafter enforced in this suit on the motion or petition of said complainant, or by independent suit by complainant in North Carolina."

It appears from the record that the aggregate value of the real estate in Virginia is $105,910, and that the aggregate value of the real estate in North Carolina is $45,390.

Where there are no children of a deceased husband and no debts, the widow, in Virginia, is endowed of a life estate in all of the real estate of which her husband died seized and possessed. A widow under the same circum-

stances in North Carolina is endowed with only a one-third interest for life. In Virginia the widow's dower rights in all except one-third of her husband's real estate is subject to the payment of his debts. In North Carolina the widow, unless she has voluntarily released her dower, takes her dower interest free of such debts. The result of that part of the decree quoted is to decrease, for the benefit of the widow, the value of the interest of the heirs in the real estate situated in North Carolina. Indeed, the decree goes further and, by judicial fiat of a Virginia court, attempts to make the debt in question a lien upon real estate situated in a foreign jurisdiction. This I do not think a chancery court, broad as are its powers, can do.

A court of equity has power in a proper case, by a decree *in personam,* to require an heir to account for real estate which descended to him in another jurisdiction. *Dickinson* v. *Hoomes' Adm'r,* 8 Gratt. (49 Va.) 353; and Minor on Conflict of Laws, section 112.

Assuming the obligation claimed by the widow to be valid, I do not think she has made out a proper case for a court of equity to compel the heirs to account for the value of the property which they have inherited in North Carolina to the satisfaction, in whole or in part, of the debt.

Virginia Code, sec. 5117, as amended by Acts 1924, ch. 304, gives to the widow a life estate in one-third of all the real estate which her husband owned during his life, unless she had voluntarily relinquished her right therein. It further provides: " * * * but if he die wholly intestate and without issue of the marriage which was dissolved by his death or of a former marriage, his widow shall be endowed of one-third of such real estate, as aforesaid, *and, in addition thereto, subject to the rights of her husband's creditors, of all the residue of such real estate of her husband; * * * ."* (Italics supplied.)

Under this statute the widow is not entitled to a life estate in all the real estate of which her husband died

seized and possessed until she has paid or discharged all debts due by her husband's estate. The widow, as a general creditor, claims the right in this case to subject so much of that part of the real estate not assigned to her as dower to the payment of her debt. She, as any other creditor, is entitled to the enforcement of that right in this proceeding. Her right as a creditor in this part of the real estate is superior to her right as a widow of decedent, but such right occupies no higher plane than that of any other general creditor. Upon what ground could this, or any other, creditor base a claim to have respondents account for the property situated in another jurisdiction, when it is conceded that the property before the court in this case is valued at approximately seven times the amount of the debt established?

It is apparent, then, that the widow as a creditor has no ground upon which to base a prayer for the heirs to account to her for any property in a foreign jurisdiction. The prayer for such relief emanates from the complainant in her right as the surviving spouse of the decedent. The same statute which entitles the widow to a life estate in two-thirds of the husband's real estate expressly declares that such life estate is "subject to the rights of her husband's creditors" therein.

The widow contends that, under the statute law of North Carolina, she is entitled to have one-third of the real estate of her husband in that state set apart to her as dower, and that the other two-thirds passes to the heirs subject to the rights of creditors therein. Thus the widow states that two-thirds of the real estate in Virginia is liable to the discharge of her debt, and two-thirds of the real estate in North Carolina is likewise liable for the payment of the same debt. If two-thirds of the real estate in both states is held in this proceeding to be liable for her debt, her two-thirds part of the real estate in Virginia will be relieved *pro tanto*.

She bases this contention on the doctrine of contribution. "It is essential to the application of the principle of con-

tribution that the party claiming contribution be in *aequali jure* with the others; the principle applies only in cases where the situations of the parties are equal, since equality among persons whose situations are not equal is not equitable." 13 Am. Jur. 12.

The statute law regarding the dower rights of a widow, where there are no children, is quite different in the two states. Under the facts stated, I do not think the situations of the parties are sufficiently equal to apply the doctrine of contribution.

The alleged debt was contracted in Virginia for the specific purpose of improving real estate in Virginia. This suit was brought in Virginia to enforce this obligation. Even if it is paid out of the Virginia real estate, the widow will receive real estate in Virginia valued at approximately twice the amount of real estate owned by the decedent in North Carolina, only two-thirds of which will pass to the heirs if the debt is discharged out of property lying in this jurisdiction. The widow has laid claim to all tangible personal property, lying both in Virginia and in North Carolina; that is, she claims that in her husband's life time he gave her all jewelry owned by him, valued at from ten to twelve thousand dollars, and stated that all the valuable furniture and antiques formerly owned by her husband had been given to her or purchased by her. Without authority, she removed fixtures, including a very valuable candelabra, from her husband's home in Tarboro, North Carolina. In her desire to exact from the estate of her husband every possible farthing, she has shown little, if any, consideration to the brother and sisters for whom the decedent, in a copy of the will exhibited in this case by her, stated: "It is my principal concern to provide for my wife Carrie Biggs Morrison, my sisters, Grace L. Grady and Hope Morrison, and my brother Willard S. Morrison, during the remainder of their several lives, * * * ."

These circumstances disclose no equitable grounds for a court of chancery to exercise its extraordinary power to

compel the heirs, by a proper decree *in personam,* to account for the value of property in a foreign jurisdiction which they have inherited from a common ancestor.

For the reasons herein expressed, I am constrained to dissent from the views expressed in the majority opinion.