# Richmond

GEORGE S. HARNSBERGER, ADM'R, ETC. V. IDA F. NICHOLAS.

October 15, 1940.

Record No. 2288.

Present, All the Justices.

.The opinion states the case.

*George S. Harnsberger,* for the appellant.

*Charles A. Hammer* and *Glenn W. Ruebush,* for the appellee.

BROWNING, J., delivered the opinion of the court.

The claim here is based upon alleged indebtedness of the estate of W. T. Herring, deceased, to Ida F. Nicholas, the appellee.

During a period of years before the death of W. T. Herring, which was on October 25, 1937, he borrowed at various times certain sums of money from the appellee, which aggregated the sum of $1,450.00. At the beginning of each

year he gave her a note for the amount then due, payable one year after date, and on the due date he took up the existing note with a renewal note, including any additional monies borrowed during the current year. Thus the matter went along from year to year without payment of the indebtedness in whole or in part, until the death of the said Herring.

George S. Harnsberger, Esquire, an attorney at law, qualified as the administrator of the estate of the said Herring and he instituted a suit in chancery praying the guidance of the court in the administration of the trusts imposed upon him. He alleged specifically that Ida F. Nicholas had presented a claim against the estate for the sum of $1,450.00, which was evidenced by a note dated January 1, 1937, executed by Mr. Herring and payable to Miss Nicholas one year after date, and that he was informed that the said Nicholas had wrongfully altered and changed the said note, making it read payable "1 year" after date instead of "10 year" after date, the original wording of the note.

It will be noted that the bill did not charge the appellee with the commission of fraud. She admitted that she changed the due date by erasing the "0" appearing just after the figure "1" and before the word "year". No intention to deceive was alleged. The appellee, who was impleaded as a defendant, filed her answer admitting the alteration mentioned, but denying that it was a material alteration and that it had been wrongfully done. She alleged that Herring had mistakenly written the note to run "10 year" rather than "1 year" after date; that the latter reflected the agreement between them and that she made the alteration or change, in good faith, to accord with the agreement. She denied that there was any turpitude upon her part in relation to the matter.

The following answers to questions which were asked her make plain her mental attitude as to the alteration of the note:

"I felt like the best thing for me to do was, he had made it wrong, and I should correct his mistake, and I rubbed the naught out and that is all I did.

"I only rubbed out the naught to make it like he had been making it, like it was supposed to be made."

"And I thought then it would be exactly as he made it and that is why I did it. I felt that if he could speak, he would tell me to do it and he would have."

The case was referred to a commissioner of the court who was directed to report, among other things, the outstanding liabilities of the Herring estate. The depositions of witnesses were taken before the commissioner relating to the Nicholas claim. The commissioner found that W. T. Herring was indebted to Ida F. Nicholas in the sum of $1,450.00, but he disallowed the claim because she had changed or altered the note, although he reported that she had done this to correct the error of the maker in stating its due date. He further reported that Ida F. Nicholas did not rely upon the note but asserted her claim as an indebtedness against the Herring estate. His opinion was that if there was merit in her position in this respect, then, the plea of the statute of limitations, filed by the administrator of the estate, was good.

The trial court, in approving a portion of the report, said in a carefully considered and well-reasoned opinion:

"The corroborative evidence—excluding the altered note —tends strongly to support the facts alleged and testified to, which are essential to establish the existence of the debt claimed and when the commissioner found that W. T. Herring was indebted to Ida F. Nicholas as of January 1, 1937, in the sum of FOURTEEN HUNDRED AND FIFTY DOLLARS ($1,450.00), he did not err. I do not think it necessary to recite the evidence or any part of it. The testimony of W. I. Herring and J. M. Hammer and the checks and check stubs corroborate her testimony. * * *

"However, I am of the opinion the commissioner did err when he held that said indebtedness was barred by limitation. The debt became due and payable January 1, 1937—

the date of the altered note which was given in renewal of a note falling due on that date. Applying the Statute of Limitations it is evident that the time limitation fixed by statute has not yet expired."

██ We fully concur in the finding of the commissioner and the opinion of the trial court that there is sufficient evidence in the record to establish the Nicholas claim, even if we exclude the note as evidence, and we adopt the above quotations from the trial court's opinion as to this phase of the case and also as to the applicability of the plea of the statute of limitations.

█ It remains to consider the question of whether or not Miss Nicholas can recover upon the original indebtedness for which the altered note was given, even though she may not recover on the note itself. The opinion well answers this question:

"The prepondering weight of authority is that she can, unless it be made to appear that the alteration—if material and unauthorized—was made with fraudulent intent.

"In the case at bar no fraud is charged, nor does the commissioner base his finding on any such intent on the part of Ida F. Nicholas in making the alteration; nor, as I view the evidence, is any such intent proved. On the contrary the alteration appears to have been made by her under the mistaken idea that she had the right to make the alteration in order to make the note conform to the true understanding as to when it was to fall due."

In Ruling Case Law, volume 1, page 1003, section 34, it is said:

"It is well established that, so far as regards the instrument itself, the unauthorized alteration of a written agreement in a material part, by one of the parties thereto, precluded him from claiming any advantage thereunder. Such an alteration so vitiates the instrument that no recovery may afterward be had upon it as altered. This general rule, however, had reference only to the effect of a material unauthorized alteration upon the instrument itself, without regard to whether, notwithstanding such alteration, recovery may be

had upon the original consideration for which the instrument was given or upon the contract evidenced by such instrument, nor does the application of such rule always necessitate the exclusion of the altered instrument as evidence." *Newall* v. *Mayberry,* 3 Leigh (30 Va.) 250, 23 Am. Dec. 261.

In Bigelow on Bills, Notes and Checks, 3d Ed. (Lile), p. 409, section 519, this is said:

"By the unwritten law, as well as by the statute, to be considered below, to invalidate the instrument the alteration must be so material as to alter the effect of the instrument as originally executed. Thus to insert 'on demand' in an instrument stating no time of payment, and therefore already payable on demand; or to insert 'or bearer' where the instrument is non-negotiable; or to correct a mistake therein so as to conform the instrument to the real contract of the parties, are illustrations of alterations that do not affect the validity of the instrument."

The last illustration used by Prof. Lile is clearly the case under consideration.

*Idem,* p. 413, section 522, note 7, Prof. Lile in speaking of the effect of the English rule to which the American rule is conformed, said: "It is to be observed that it is the altered *instrument* that is thus declared invalid, and not the *original debt* which constituted the consideration."

Am. Jur. Vol. 2, p. 623, section 36, is as follows:

"Section 36. Recovery on Original Contract or Consideration.—While the intent or motive with which a material alteration in an instrument was made is of little or no moment in determining the effect of such alteration on the instrument, yet the intent or motive prompting the change may be of the greatest importance in determining whether the right of recovery upon the original consideration for which the instrument was given is affected by the alteration. The rule as to the vitiating effect of material alterations in written instruments is one founded in public policy, and in order to preserve the integrity of legal instruments by taking away the temptation to tamper with them, the law

goes still further, and, where there is any fraudulent intent or purpose in making the alteration, forbids the party responsible for such change to recover on the original consideration. To allow one who has designedly made a material alteration in an instrument to recover on the original consideration would be to depart from the sound and just principle that no one shall be permitted to take the chance of committing a fraud without running any risk of losing by the event when it is detected. If, however, the alteration of the instrument was without fraudulent intent, the instrument itself is invalidated thereby, but the right to recover on the original consideration remains. Although the identity of the instrument may be destroyed, it will not operate to cancel the debt of which the instrument is merely evidence. For instance, where the taking of a promissory note does not extinguish the original debt or operate as payment, the alteration of it by the payee after delivery and without the maker's consent, if without fraudulent intent, will not preclude him from recovering on the original demand. This right to sue on the original indebtedness, under the rules above stated, is not cut off by the making of an unsuccessful attempt to recover on the altered instrument."

An illuminating annotation is found in A. L. R., Vol. 127, p. 345 on this subject. It is appended to the case of *Perry* v. *Manufacturers National Bank of Lynn* (Mass.) 25 N. E. (2d) 730, 127 A. L. R. 339, in which the ruling is in harmony with the authorities we have quoted. See the recent case of *Morrison et als.* v. *Morrison et als.*, 174 Va. 58, 4 S. E. (2d) 776, on the extent of the corroboration required of the testimony of a witness to a transaction where the other party is incapable of testifying.

The law, we think, is plain and it is happy that it is consonant with the very right in this case. Mr. Herring told his employee, J. G. Hammer, that he was indebted to Miss Nicholas. He told his son that she had a bond that he had been taking care of, and if anything happened, she had it. This supports the comment, that it was the reflection of one who was meditating upon the uncertainty of life, and

in consequence wished to acquaint a member of his family with the state of his worldly affairs. It is ominous in this connection. In addition, the check stubs and cancelled checks, that were obtainable by Miss Nicholas, in favor of Mr. Herring, aggregating a large portion of the amount claimed, furnish very strong evidence of its validity. If he did not owe the money, why did he voluntarily continue to execute notes for it?

As to the weight to be attached to the findings of a commissioner, approved by the Chancellor, we find the following in the syllabus of the case of *American National Bank of Portsmouth* v. *Ames*, 169 Va. 711, 194 S. E. 784:

"While a finding of a special master and the Chancellor, that the burden of proof has not been sustained, is not binding upon the Supreme Court of Appeals when based on depositions, it is entitled to great weight and will not be lightly disturbed."

Neither the authorities we have cited nor our comments offend, we think, the significance and intendment of sections 5686 and 5687 of the Code of Virginia.

We are of the opinion that the purpose for which the suit was instituted, the pleadings therein, and the compass of the evidence, present a case in which the relief granted to Miss Nicholas by the decree of the Chancellor is entirely proper and legal.

To thwart a recovery by her because of the alleged inartificial pleadings would be, in our opinion, a denial of justice.

We affirm the decree of the trial court in all respects.

*Affirmed.*