# Wytheville

## SHENANDOAH VALLEY NATL. BANK, ADMR. v. WILLIAM R. LINEBURG, ET ALS.

June 8, 1942.

Record No. 2535.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*R. Gray Williams* and *J. Sloan Kuykendall*, for the appellant.

*Harrison & Harrison*, for the appellees.

HOLT, J., delivered the opinion of the court.

On the 25th day of April, 1938, Mrs. Nora B. Orndorff died intestate in the city of Winchester, and on the 29th day of April, 1938, the Shenandoah Valley National Bank of Winchester qualified as administrator of her estate. Thereafter the administrator instituted this suit, its purpose being to ascertain who was the owner of a certain $1500 bond of date July 30, 1928, executed by W. R. Lineburg and Lorrie Bell Lineburg to Nora B. Orndorff and due one year after date. This bond was secured by a trust deed of even date, which conveyed as security to trustees certain real estate in the city of Winchester.

In its bill these statements appear: There was paid on the Lineburg note by William R. Lineburg $100 as of March 1, 1933, and by him $100 as of February 17, 1934, and nothing more either by way of principal or interest. Harold Fletcher, a grandson of decedent, is her sole heir and distributee and is the real party in interest in this suit. This Lineburg bond was not found among Mrs. Orndorff's papers. There was, however, no concealment. Mr. Lineburg told Clarence H. Fletcher, father of Harold, on the day of Mrs. Orndorff's funeral that they, the Lineburgs, had this bond. Thereafter this litigation was instituted.

The plaintiff in its bill said:

"That your complainant has been informed, and being informed believes and alleges that said bond forms part of the

estate of the said Nora B. Orndorff, and that said debt is still due and owing to the estate by the said W. R. Lineburg and Lorrie Bell Lineburg."

Its prayer is that the property be sold and that the proceeds of sale be properly applied. The Lineburgs answered by way of plea and said:

"These defendants for plea to the said bill say that prior to the time of the filing of the said bill and prior to the date of the death of Nora B. Orndorff, the said Nora B. Orndorff, being then of sound mind, but in the peril of impending death, and having love and affection for the defendant William R. Lineburg and his wife, Lorrie Bell Lineburg, and recognizing a legal obligation to them for many services by them rendered unto her, gave to the defendant, William R. Lineburg, the bond mentioned and described in the complainant's bill which said bond was by the decedent delivered at the time of the gift to the defendant, William R. Lineburg, endorsed in blank by the said decedent, with the express intention that the title to the said bond should pass immediately and unconditionally to the said defendant and that the said Nora B. Orndorff should then and there be divested of all right, title and interest therein, and the said bond was then and there accepted by the said William R. Lineburg and title did then and there vest in the said William R. Lineburg, and possession thereof from said time henceforth has been exclusively in the said William R. Lineburg."

Nora B. Orndorff and her husband, Isaac B. Orndorff, lived in Winchester for many years. They had only one child, Lelia, who married Clarence Fletcher. She died in 1918, leaving surviving her husband and one son, Harold Fletcher. Isaac B. Orndorff died in 1927, testate, leaving his property to the bank as trustee in trust for his wife, it at her death to pass to her son, Harold.

William R. Lineburg is a nephew of Mrs. Orndorff. He and his wife bought a house in Winchester in 1928 and borrowed from Mrs. Orndorff $1500, secured by a trust deed on their home. Mrs. Orndorff hypothecated this note with

the bank on July 13, 1935, the indebtedness which it was deposited to secure, or that thereof still unpaid, was paid on September 3, 1936, and the bond returned to Mrs. Orndorff. She was operated on in a Winchester hospital in March, 1938, returned to her home still ill, developed gangrene and went back to the hospital for another operation on April 10, 1938. She died there on April 25, 1938. At the time of her death there was living in the house with her Mrs. Eleanor Davidson and her daughter, Cornelia Davidson. Mrs. Davidson went to the Orndorff home on March 2, 1938, and was followed shortly thereafter by her daughter.

It is the Lineburgs' contention that on or about the first of April she gave to them this bond unconditionally. If there was an unconditional gift, the bond belongs to the Lineburgs; if it was not, it belongs to the intestate's estate.

The court below, in its decree deciding this case, said:

"Upon the issue of fact, being of opinion that the clear weight of the evidence establishes that Nora B. Orndorff made a completed gift of the bond and deed of trust in the bill and proceedings described to the said William R. Lineburg and Lora Bell Lineburg by delivery thereof with the present intention to give the same to them, it is adjudged, ordered and decreed that the prayer of the bill that James P. Reardon, trustee, be ordered to sell the property therein described be denied and that the bill of complaint in this cause be, and the same hereby is, dismissed."

The weight to be given to a chancellor's decree where a cause has been submitted upon depositions, we have often had occasion to consider.

A late case on that subject is that of *Lavenstein* v. *Plummer.* The opinion in that cause was handed down on April 13, 1942, *ante*, page 469, 19 S. E. (2d) 696.

Chief Justice Campbell in *First National Bank* v. *Weinburg*, 165 Va. 433, 182 S. E. 250, thus states the law:

"While it is fundamental, as held by Chief Justice Prentis in *Clevinger v. County School Board*, 139 Va. 444, 124 S. E. 440, that this court cannot avoid the duty of weighing the evidence when its sufficiency is fairly challenged,

that doctrine does not relieve the complaining party of the burden of showing error. To raise a doubt is not sufficient. Absolute certainty is rarely attainable in court proceedings, especially where there is a conflict of evidence or the element of fraud is one of the paramount issues."

Upon one who claims to be the donee of a gift rests the burden of proof. *Grace* v. *Virginia Trust Company*, 150 Va. 56, 142 S. E. 378. The chancellor below was of opinion, as we have seen, that this burden had been successfully borne.

Lineburg and his wife have both testified in detail as to when and where the gift was made. They say that it was unconditional and differ with each other as witnesses of an incident may be expected to differ who have not theretofore in conference reached a conclusion as to what their evidence would be.

It was while Mrs. Orndorff was gravely ill and a short time before she returned to the hospital for a second operation, where, as we have seen, she died. On that occasion Eleanor Davidson and her daughter, Cornelia, were present. These Davidson women were introduced as witnesses and in the main sustained the Lineburgs' claim, although in affidavits previously given at the instance of Clarence Fletcher they said they knew nothing about the gift or transfer of the bonds.

Mr. Benham, a lawyer of the Winchester Bar, said that he discussed the matter with Dr. Powers and that Dr. Powers told him that he knew nothing about it.

Mr. Lockhart, a kinsman of the Fletchers, said that he was on one occasion in Dr. Powers' office to consult him professionally and in the course of a casual conversation said to the doctor:

" 'The folks have that bond, Doctor.' He whirled in his chair like this (indicating a quick turn) and said, 'I be damned.' I heard since he did not know nothing about it. I don't know whether that is so or not. That is all I got to say in the case."

Dr. Powers' attention was called to these statements and

was examined as a witness. He could not recall having made statements attributed to him. But finally in his examination, probably after having searched his mind, he said:

"I went to Mrs. Orndorff's one morning, walked in the room, shut the door, she said, 'Doctor, I would like to speak to you about that bond I let the Lineburgs have,' and says, 'What would you do?' She named the amount, I cannot remember about that, I said, 'Mrs. Orndorff, why don't you just give it to them?' She looked at me a minute and says, 'I think that is just what I will do.' That was the end of it, that is all I know."

Dr. Powers bears a good reputation.

Three witnesses for the plaintiff have in substance said that Mrs. Orndorff told them that she had done all for the Lineburgs that she expected to do. Harold Fletcher, who visited his grandmother while she was in the hospital, said that she told him that following his grandfather's wishes she was leaving him all that she had.

We look to the attitude of these claimants and to the motives which must have certainly to some extent controlled Mrs. Orndorff. Her relations with the Lineburgs had for many years been intimate and cordial. She leant upon them; they helped her from time to time. Harold, the grandson, lived in Baltimore and seems to have manifested little interest in her until she was about to die.

When we come to the statement which it is said she made, namely, that she had done all for the Lineburgs that she expected to do, that statement, if it has any foundation, rests in the fact that she had not attempted to collect her debt, either principal or interest.

It is necessary that the testimony of the Lineburgs be supported and corroborated. Code, sec. 6209.

[■ It is not necessary that corroborative evidence required by this statute be sufficient to support a judgment. It must, however, tend to support those essential allegations upon which it rests; it must be such as would strengthen the belief of the jury in the testimony of the witness. *Krikorian* v. *Dailey*, 171 Va. 16, 197 S. E. 442; *Morrison* v. *Morrison*, 174

Va. 58, 4 S. E. (2d) 776; *Burton's Ex'r* v. *Manson*, 142 Va. 500, 129 S. E. 356.

Possession of the bond, when we remember the relations which the parties bore to each other, is in itself corroboration. 11 C. J. S. sec. 659, 8 Am. Jur. 603, 85 A. L. R., note 306.

Out of a welter of contradictions, charges, counter-charges and impeachments, these facts emerge:

On the Lineburg bond no interest had ever been paid and none demanded; on its principal two payments of $100 each were made, the last bearing date February 17, 1934. The bond itself was due at one year and might have been collected at any time. During this period the relationship between them and Mrs. Orndorff was close and intimate. Her indulgence must have been due to the fact that she thought something was due to them for their services. Mr. Lineburg was her nephew and was among those who might have expected to be an object of her bounty. Her sole distributee is Harold Fletcher. During all of this time his attentions to his grandmother were, to say the least, casual.

The bond itself continued in the possession of Mrs. Orndorff until shortly before her death and came into the possession of its makers at a time when she was desperately ill. On their part there was no concealment. Mr. Lineburg told Mr. Clarence Fletcher about it on the day its payee was buried. He and his wife bear excellent reputations. It thus appears that we have the statement of both Mr. and Mrs. Lineburg; we have an understandable motive for the gift, and we have possession of the donee. It was either given to them or they stole it. So we reach the conclusion that the evidence has been sufficiently corroborated, this independent of the evidence of Dr. Powers, which, if accepted, is in itself sufficient.

There is no error in the chancellor's decree, and it is affirmed.

*Affirmed.*