**ROSINSKI v. WHITEFORD.**

No. 10204.

United States Court of Appeals District of Columbia Circuit.

Decided Oct. 2, 1950.

Mr. James M. Earnest, Washington, D. C., for appellant.

Mr. George L. Hart, Jr., Washington, D. C., with whom Messrs. Arthur G. Lambert and James G. Wilkes, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER, and WASHINGTON, Circuit Judges.

EDGERTON, Circuit Judge.

Courts once refused to receive testimony from any witness interested in the result of a case. That rule was largely abrogated in the District of Columbia many years ago. Act of July 2, 1864, 13 Stat. 374, D.C.Code (1940) § 14—301. But until 1948, a remnant of the old rule prevented a surviving person from testifying about a transaction with a deceased person in a suit against his representative. D.C.Code (1940) § 14—302. In 1948 Congress amended § 14—302. It now enables the surviving party to testify, but limits the effect of his testimony. The amendment provides that "In any civil action * * * against the * * * representative of a deceased person * * * no judgment or decree shall be rendered in favor of the plaintiff founded on the uncorroborated testimony of the plaintiff or of the agent, servant, or employee of the plaintiff as to any transaction with or action, declaration or admission of the deceased * * *." D.C.Code (1940) Supp. VII (1949) § 14—302. The present appeal turns on the meaning of this amendment.

Carl G. Rosinski, now deceased, was a licensed real estate broker in Washington, D. C. He was interested in securing a lessee for certain property at 12th and G. Streets N. W. that was suitable for a five and ten cent store. In 1935 he and a Buffalo broker named Morganstern tried to persuade Neisner Brothers, of Rochester, N. Y., to lease the property. The brokers did not succeed at that time. Negotiations were resumed intermittently, and in 1945 with success.

Soon after the property was leased to Neisner Brothers, Rosinski died. Appellant is his executrix.

Appellee Whiteford, a licensed Washington real estate broker, has recovered judgment against appellant for half of Rosinski's share of the brokerage fee. Appellant does not deny that appellee is entitled to half if he is entitled to anything. Her contention is that his judgment is founded on his own uncorroborated testimony and is therefore invalid.

The principal evidence in support of appellee's claim is his own testimony to the following effect. In 1938 he approached Rosinski and they agreed to try to lease the property to W. T. Grant Co. of New York. When it became clear that Grant was not interested it occurred to Whiteford to try Neisner Brothers. In January 1939 he wrote them a letter proposing that they lease the property through him and Rosinski. Whiteford showed Neisner's reply, which was encouraging, to Rosinski, who had not previously known of Whiteford's attempt to interest Neisner. Rosinski was impressed and encouraged Whiteford to carry on the negotiations. Rosinski even drafted a letter to Neisner in March 1939, which for tactical reasons he gave to Whiteford to be copied and sent to Neisner over Whiteford's signature. This was done. As the reply was not favorable, Rosinski told Whiteford to let Rosinski carry the ball; Rosinski was the "more skilled in downtown leasing". Except for a letter which he wrote to Neisner Brothers in 1943 in which he reminded them that he and Rosinski were still offering them the property, Whiteford left the matter largely to Rosinski's discretion. But there were conferences between the two men about the matter in 1943 and as late as December 1944. Whiteford and also Morganstern, the Buffalo broker, testified that according to the custom of real estate brokers a joint undertaking to lease property of the sort here involved continues until a party dies or the property is taken off the market.

The District Court instructed the jury not to consider Whiteford's testimony unless they found corroboration. The jury found, in effect, that Whiteford and Rosinski had jointly attempted to lease the property to Neisner Brothers and that this joint undertaking had continued until the property was leased. The question is whether these findings and therefore the appealed judgment are "founded on the uncorroborated testimony of the plaintiff" within the meaning of the statute.

The New Mexico court has interpreted a similar statute as requiring corroboration that "in and of itself, tends to establish the essential fact necessary to a recovery." In re Cardoner's Estate, 27 N.M. 105, 109, 196 P. 327, 328. This amounts to saying that a survivor's testimony may be considered only when it is not essential to the result. Such a view nearly nullifies the statute. The Virginia court, in interpreting a similar statute, has said: "Corroborating evidence is such evidence as tends to confirm and strengthen the testimony of the witness sought to be corroborated; that is, such as tends to show its truth, or the probability of its truth. * * * It usually consists of separate and independent items, no one of which of itself would probably be sufficient, but, when joined together, lead satisfactorily to the conclusion of the truth of the testimony of the witness sought to be corroborated." Varner's Ex'rs v. White, 149 Va. 177, 185, 140 S.E. 128, 130. "It is not necessary that corroborative evidence required by this statute be sufficient to support a judgment." Shenandoah Valley Nat. Bank v. Lineburg, 179 Va. 734, 739, 20 S.E. 2d 541, 544. We agree with the Virginia court. We think the statute permits a judgment based essentially on the survivor's testimony if there is other evidence from which reasonable men might conclude that his testimony is probably true. As we have held in a workmen's compensation case, in regard to a deceased employee's story, "Whatever tends to make a story substantially more credible or probable corroborates it." Associated General Contractors of America, Inc., v. Cardillo, 70 App.D.C. 303, 305, 106 F.2d 327, 329.

We think appellee's testimony was sufficiently corroborated. A letter dated

July 18, 1940 from Rosinski to Grant confirms the background fact that appellee once tried in cooperation with Rosinski to lease the property to Grant. Appellee's letter of January 1939, proposing that Neisner lease the property through appellee and Rosinski, was found in Neisner's file and introduced in evidence. Appellee's former secretary, who was no longer his agent or employee, testified that Rosinski handed her the draft letter of March 1939, which she copied on appellee's letterhead and which went to Neisner Brothers over appellee's signature. The Rosinski draft, on Rosinski's letterhead, was introduced in evidence. Two experts testified it was written on Rosinski's typewriter. All this corroborates appellee's testimony that he and Rosinski undertook jointly, in 1939, to lease the property to Neisner. Appellant failed to convince the jury that this joint undertaking was abandoned. It was no part of appellee's case to prove that it was not abandoned.

Affirmed.