### BEVARD v. BEVARD.
#### No. 4733–50.

United States District Court
District of Columbia.

Feb. 12, 1952.

Paul Lee Sweeny, Thomas A. Farrell, Washington, D. C., for plaintiff.

Marcus Borchardt, Thomas B. Shoemaker, Washington, D. C., for defendant.

KEECH, District Judge.

This is an action by Robert E. Bevard, individually in his own right and as administrator c. t. a. of the estate of Ephriam H. Bevard, deceased, against Mrs. Grace Bevard, as executrix of the estate of Dr. William A. Bevard, deceased, and in her own right and as sole legatee and devisee of Doctor Bevard. The complaint and amended complaint are both termed complaints for "moneys had and received by defendant's decedent to the use of, and belonging to the plaintiff," but from the evidence adduced it is apparent that the plaintiff's cause of action, if any there be, is one for an accounting by Mrs. Bevard, as personal representative of Doctor Bevard, in the estate of Katherine Harper Bevard, of which Doctor Bevard was sole executor.

The following facts are undisputed. Katherine Harper Bevard died September 25, 1927. Her will provided that the family home should not be sold as long as her brother Ephriam desired to live there, and that when the home was sold William, if living, should be paid $1,475 with interest from January 29, 1920, to reimburse him for the amount invested by him in the prop-

erty. The will further provided that after payment of certain legacies totalling $500 and erection of a family memorial at the cost of about $2,500, the remaining estate should be divided equally between her brothers, William, Ephriam, and Robert. The will named William and Ephriam executors; and on Ephriam's refusal to act, William was appointed sole executor, under special bond. At the time William qualified, the estate included real property valued at $7,500 and personal property estimated at $27,500. No inventory of the estate was required to be filed and none was filed. However, it is apparent that the personal property consisted largely of mortgages, which were left by Ephriam and Robert with William for collection and re-investment of the proceeds or part thereof. It is conceded that from time to time William made payments to Ephriam and Robert on account of the interest and principal of their shares. The last known payment to Ephriam was transmitted by letter of October 7, 1941, and the last payment to Robert was made August 11, 1943.

On November 22, 1941, Ephriam died. The executrix named in his will declined to serve; and on October 30, 1942, Robert filed a petition for letters of administration c. t. a. on Ephriam's estate, declaring that the estate consisted of personal property of the value of $300. On November 23, 1943, Ephriam's estate was appraised at $342.98.

Robert took over the family home after Ephriam's death.

On July 14, 1949, Dr. William A. Bevard died, and on November 22, 1949, Mrs. Grace Bevard was appointed executrix of his estate. At the time of William's death there was a balance of $10.78 in his account as executor of Katherine's estate at the National Savings and Trust Company.

On June 22, 1949, almost a month after the date by which claims against William's estate were required to be filed, the plaintiff filed two claims in his own name against the estate, one for $4,200 or 42 shares of common stock of Cities Service, and the other for $4,700 with interest at 5½% from October 7, 1941.

On October 27, 1950, Robert filed this suit against Mrs. Bevard, claiming that at the time of his death William was indebted to him in the sum of $4,700, representing monies held by William for the account of Robert plus interest thereon from October 7, 1941, and the sum of $4,200 representing the value of 42 shares of Cities Service common stock, plus accrued dividends since June 10, 1930. On December 14, 1951, plaintiff filed an amended complaint, claiming the sum of $4,700 plus interest due him as administrator c. t. a. of Ephriam's estate, and the 42 shares of Cities Service stock, or value thereof, plus accrued dividends due him in his own right.

The evidence at the trial showed that plaintiff charges failure of William, as executor of Katherine's estate, to make a full accounting to Ephriam and Robert for their respective shares. It is the plaintiff's contention that his establishment of the fact of the fiduciary position of William as executor of Katherine's estate and the fact that he received funds as such fiduciary, makes out a prima facie case justifying an order for an accounting, and that the burden is on the defendant to show either that an accounting has been made or that sufficient time has elapsed to warrant the presumption that an accounting was made. Plaintiff argues that there has not been such a lapse of time and, further, that any presumption of final accounting and distribution is rebutted by the fact that a balance remained in William's executor account at the time of his death.

The defendant, on the other hand, denies any liability and contends that full settlement and distribution were made by William to Ephriam and Robert in Katherine's estate; and that even if the court should find the evidence insufficient to support a finding that William made an accounting, the plaintiff's causes of action, both in his own right and as administrator, are stale and barred by the statute of limitations or laches.

In reply, plaintiff argues that neither the statute of limitations nor laches can bar his action for an accounting, on the grounds that no cause of action would ac-

crue until there was a termination of the trust or disavowal by the fiduciary that he held assets of the beneficiary, that the executor's account remained open at the time of his death, and that such an extraordinary period of time as to warrant application of the doctrine of laches had not elapsed prior to the filing of this suit. Plaintiff further calls attention to the rule that the courts exercise the utmost leniency in applying the doctrine of laches where it appears that the delay in asserting a claim is due to the intimate personal relations existing between the parties and the high degree of confidence reposed by one in another, especially when the family relation exists.

At the hearing of this case, the court received on behalf of the plaintiff the testimony of the plaintiff, Robert E. Bevard, the defendant, Mrs. Grace Bevard, and a Mr. Risdon, representing the National Savings and Trust Company.

The plaintiff, Robert E. Bevard, who is now seventy-nine years of age, testified that his brother had never made a final accounting or distribution in the estate of Katherine, and that he made no demand for such an accounting because he trusted William. The plaintiff put in evidence a number of letters from William and Mrs. Bevard to Robert and Ephriam during the years 1929 to 1943, referring to Katherine's estate, and transmitting payments or discussing the investment or reinvestment of their shares.

In support of his claim in his own right, plaintiff relied to a great extent on a paper signed by William and dated June 10, 1930, certifying that as of that date he held in his own name 42 shares of Cities Service common stock purchased for Robert. The plaintiff admitted receiving payments on account of interest and also on the principal of his share from time to time when he needed money, and that the last payment to him was sent by William in a letter dated August 11, 1943, in which William stated Robert's money had been reinvested in debenture bonds, which he was forwarding by registered mail, and that he enclosed a check for interest "to close your account with me." This same letter shows that Robert had gotten the family home after Ephriam's death, and that William was then eighty-four years of age and having "to dig along to make both ends meet." Robert testified that this letter did not mean that his entire account was closed, but admitted that although he continued to correspond with William until his death in 1949 he never received any further payment from William on account of Katherine's estate and never made any written demand for further payment. There was testimony by Robert that on May 30, 1946, he met William at Brownsville, Pennsylvania, and asked that the Cities Service stock be sent to him, which William agreed to do as soon as he returned home, but the stock was not sent. This testimony was received over the objection of defendant's counsel, subject to a motion to strike on the ground that there was no corroboration as required by § 14–302 of the District of Columbia Code.

Robert further testified that he came to the District of Columbia after William's death and saw Thomas B. Shoemaker, Esq., attorney for William's estate, who told him Mrs. Bevard had said the only thing William had that belonged to Robert was a few shares of Cities Service stock. If this be held to be credible testimony, it would corroborate the testimony of Robert that William in 1946 admitted he held Cities Service stock for Robert.

The plaintiff testified that he kept no account of payments received by him from William on his share of Katherine's estate.

As to the money claimed by Robert as administrator of Ephriam's estate, Robert testified that he knew that Ephriam had received payments on account of his share of Katherine's estate, as shown by some of the letters from William to Ephriam, but that there had been no final accounting. Plaintiff contends that this is evidenced by a letter dated October 7, 1941, from William to Ephriam, which transmitted a payment of $138.85 "for the Interest due at 5½% for three year investment." Plaintiff argues that this interest payment was for six months; that such payment would warrant a finding that six weeks before Ephriam's death William still had invested approximately $4,700 of Ephriam's share of Kath-

erine's estate;[1] and that it can be presumed that William still had such sum six weeks later when Ephriam died.

Robert testified that on Ephriam's death he and William each paid one-half of Ephriam's funeral expenses out of their personal funds.

The defendant, Mrs. Grace Bevard, was called as a witness for the plaintiff. Mrs. Bevard, who is now eighty-six years of age, testified that she was not generally familiar with the administration of the Katherine Bevard estate, but that her husband had told her that the estate had been settled. The latter testimony was unquestionably objectionable as hearsay, but such objection was cured when the same fact was subsequently brought out by the plaintiff's own cross-examination of Mr. Shoemaker.[2]

Mrs. Bevard further testified that she knew her husband had sent checks to his brothers on account of their shares; that her only knowledge of the purchase of Cities Service stock for Robert was as shown by the letters from William to Robert which had been put in evidence by the plaintiff; that both she and her husband purchased Cities Service stock in their own right at the same time as the purchase for Robert, or prior thereto (a fact corroborated by the exhibits); that the 27 shares of Cities Service stock listed as part of the assets of William's estate were owned by him in his own right, and that she also holds 135 shares in her name, purchased with her own funds; that she never stated that the 27 shares of Cities Service stock belonged to Robert.

On questioning by plaintiff's counsel, Mrs. Bevard also denied telling Robert at the time of Ephriam's death that they would split the interest on the remaining portion of Ephriam's share, and testified that at the reading of Ephriam's will, which bequeathed legacies totalling $3,950 and provided that $100 should be spent to transport the members of his church and lodges to his funeral, she stated that Ephriam did not have that much.

Through the witness Risdon, the plaintiff attempted to show certain discrepancies in William's account as executor, such as a note coming into the account in favor of the beneficiaries of the estate of Katherine and going out of the estate as collateral, without any corresponding entry on the ledger indicating funds therefor coming back into the estate. Through such procedure it was sought to prove such a commingling of the estate funds with William's personal funds as to warrant an order for an accounting.

However, the witness Risdon stated that on the face of the records there is no indication of any irregularity, for it might have been that the money was utilized for estate purposes by use of a cashier's check or in some other way which would not be reflected on the ledger sheets. The witness further testified that the bank records were not conclusive and would not show a complete story as to the transactions of the executor. The witness stated that at the time of William's death, July 14, 1949, there was a balance of $10.78 in the Katherine Bevard estate account.

The original bank records produced by the witness Risdon covered only the period from November 12, 1927, to August 31, 1939, the subsequent records having been microfilmed. The witness stated that production of the microfilms would be a substantial operation, requiring special equipment, and questioned the practicability of bringing the records into court. He stated that before use of the records might be made the plaintiff would have to make some financial arrangement with the bank to cover the cost.

With this state of the record the court sought to learn from plaintiff's counsel what he expected to show through the microfilm records. Counsel was unable to state definitely, since he was without knowledge of their contents, but did ven-

1. See also infra at page 12.

2. United States v. Gruber, 2 Cir., 123 F. 2d 307; Trouser Corporation of America v. Goodman & Theise, 3 Cir., 153 F.2d 284.

ture the opinion that they would repeat the pattern disclosed by the records for the period 1927 to 1939 which had been made available.

At this stage of the trial, a motion to dismiss was interposed by counsel for the defendant and argued at length. At the conclusion thereof, the court denied the motion to dismiss without prejudice, and concluded, with the acquiescence of counsel, to go forward with the testimony of the defense. It was understood that should the court conclude that there should be an accounting, further consideration would be given to production of the microfilmed bank records, in order that a proper determination might be made of the amounts, if any, due the plaintiff in his own right and as administrator for Ephriam's estate.

The course taken by the court in this cause has permitted to be spread clearly on the record the entire contention of the plaintiff, save for evidence which would be substantially cumulative on the question of the plaintiff's right of action, and production of which would entail undue cost to the plaintiff should it be determined that he had no right of action or that such right was barred.

The defendant's evidence, in addition to her own testimony when called by the plaintiff, consisted of the testimony of Thomas B. Shoemaker, Esq., attorney for the estate of William Bevard, and B. Woodruff Weaver, Esq., attorney for the estate of Frank Stetson, Esq., deceased, who was counsel for the estate of Katherine Bevard.

Mr. Shoemaker testified that he had no recollection of discussing Cities Service stock at all with Robert, and specifically denied having said, either for himself or for Mrs. Bevard, that any Cities Service stock was held by William for Robert. Mr. Shoemaker also testified that Robert stated, "Tom, as far as I am concerned, I have gotten all that is due me," and that he (Robert) believed Ephriam had also received all that was due him; but inasmuch as Ephriam in his will had made bequests aggregating $3,950, Robert had wanted to see if William had any cancelled checks showing that all due Ephriam had been paid.

Mr. Weaver testified that although a diligent search had been made among Mr. Stetson's papers, as well as those of the National Savings and Trust Company, no further records of the Katherine Bevard estate had been found.

In addition, the defendant put in evidence a copy of Robert's petition for letters of administration c. t. a. on Ephriam's estate, a copy of the appraisal of Ephriam's estate, proof of publication of the notice to creditors in the estate of William A. Bevard, the two claims filed by Robert against William's estate, and letters written by Robert to William from 1942 through 1948.

■ On the evidence adduced, I find that final distribution of the estate of Katherine H. Bevard was made by William as to both Robert and Ephriam.

As to the claim of Robert in his own right:

■■ The letter of William to Robert dated August 11, 1943, is evidence that Robert's account with him was closed entirely. This is borne out not only by the specific statement of William, but also by the general tenor of the whole letter. The only evidence which would lead to any other interpretation is the plaintiff's testimony that William in 1946 stated he would send to Robert the Cities Service stock now claimed by him, and plaintiff's testimony as to Mr. Shoemaker's statement, after the death of William, that Mrs. Bevard had said the only thing William had belonging to Robert was a few shares of Cities Service stock. To permit a judgment to be based thereon, the plaintiff's testimony as to the 1946 meeting with William must be corroborated by other credible evidence.

■ William's certification that on June 10, 1930, he held in his name Cities Service stock for Robert, does not corroborate the alleged admission by him that on May 30, 1946, he still held such stock for Robert, particularly in view of the fact that William, with Robert's acquiescence, exercised his own judgment freely in reinvesting Robert's share of the estate, as shown by the correspondence, which also reflects the rapid drop in the value of this stock during

the depression years. The only corroboration in this record of William's alleged admission in 1946 that he still held Robert's stock is plaintiff's testimony as to Mr. Shoemaker's statement that after William's death Mrs. Bevard admitted William had a few shares of Robert's Cities Service stock. However, Mr. Shoemaker has categorically denied any such statement.

On weighing the credibility of the plaintiff and the witness Shoemaker, and considering their respective interests, apparent ages, and all the other circumstances disclosed by this record, I conclude that credence should be given to the denial by Mr. Shoemaker. I am therefore constrained to hold that there is no corroboration of Robert's testimony as to the purported conversation with Dr. William on May 30, 1946, and to exclude such testimony from my determination of Robert's claim.[3]

Although there is no evidence of a formal accounting by William to Robert, I find the letter of 1943 on its face clearly indicates a final settlement of Katherine's estate so far as Robert was concerned. Should the letter itself be held ambiguous and susceptible of some other interpretation, I find such ambiguity is dissipated by all the other circumstances disclosed by the record.

It is apparent that from the beginning the administration of Katherine's estate was handled in a very informal manner between the brothers. However, on June 22, 1943, the plaintiff wrote to the Register of Wills, asking for a copy of the final disposition of Katherine Bevard's will, "such as the account filed and final disposition of her estate," and it was less than a month thereafter that Dr. William wrote Robert closing his account. Robert never received another payment annd never wrote William asking for a further payment or accounting, although William was past eighty-four years of age and in moderate financial circumstances. Further, letters from Robert to William, introduced by the plaintiff, show that Robert prior to William's death was also in poor health, working little, renting rooms in the family home for income. William's letter of August 11, 1943, mentions Robert's desire and inability to place a $500 mortgage on the house. All the circumstances as disclosed by the correspondence introduced by plaintiff, as well as the plaintiff's actions and failure to act, lead to the inescapable conclusion that had William still held any part of Robert's share in Katherine's estate, Robert would have made demand for payment.

The letter of August 11, 1943, is, in substance, a notice of the termination of William's fiduciary relationship and disavowal that he held further funds in trust for Robert.

In addition to the circumstantial and documentary evidence, there is the testimony of Mr. Shoemaker, a credible witness, that Robert admitted to him after William's death that he had been paid in full. There is also the testimony of Mrs. Bevard that Dr. William told her he had made final settlement of Katherine's estate.

As to the plaintiff's claim as administrator of the estate of Ephriam Bevard:

Plaintiff's only evidence that William might, at the time of Ephriam's death, have held an amount due him from Katherine's estate, is a letter of October 7, 1941, from William to Ephriam, enclosing a check for $138.85 "for the Interest due at $5\frac{1}{2}\%$ for three year investment." There is no other indication of what period this interest covered. The last prior interest payment to Ephriam disclosed by the correspondence was one of $165 on October 5, 1940, from which no particular inference can be drawn. There is therefore no basis for plaintiff's claim that the payment on October 7, 1941, represented six months' interest; and if it had been, the principal of the investment would have been approximately $5,049, and not $4,700 as claimed by the plaintiff.

Plaintiff contends that, in view of the fact that interest was paid to Ephriam six weeks before his death it is reasonable to infer that there was no payment of the principal amount of this investment during Ephriam's lifetime. Against this, it is argued by the defendant that because of

3. Rosinski v. Whiteford, 87 U.S.App.D.C. 313, 184 F.2d 700.

Ephriam's condition and the expenses of his illness it is equally reasonable to infer that if anything was due him it was paid to him during this period.

Color is given to the position that William held no funds due Ephriam at the time of his death by the testimony of Robert that he and William paid Ephriam's funeral expenses out of their own funds. Significant, too, is Mrs. Bevard's statement at the reading of Ephriam's will that Ephriam did not have enough to pay the legacies. There is also corroboration in the fact that when Robert applied for letters of administration c. t. a. on Ephriam's estate he listed assets of only $300 and gave no indication that any property might be due from Katherine's estate, notwithstanding the fact that he must be presumed to have had in his possession at that time the letter of October 7, 1941, which he introduced in evidence in this case and which forms the basis of his claim as administrator. Further, this record shows no demand on William for payment or any indication that further sums were due Ephriam, either by Ephriam or by Robert as his administrator. The first time any mention was made of a claim on behalf of Ephriam's estate, notwithstanding the frequent correspondence of Robert with William and his wife, was after William's death. At that time plaintiff stated he believed Ephriam had received his share of Katherine's estate and merely inquired whether there were any cancelled checks. No claim was filed against William's estate by the plaintiff as administrator for Ephriam's estate; the original complaint in this action contained no such claim; and for the first time, in the pre-trial order signed December 10, 1951, it is stated that plaintiff asserts a claim as administrator c. t. a. for Ephriam's estate.

There are indications in the record that Ephriam was dissatisfied long before 1941 with William's handling of his share. On January 2, 1930, Mrs. Bevard wrote Robert's wife, "Wm. says tell Rob he is going to settle Eph's portion when the notes come due in Jan. & Feb. Eph wrote Wm. a rotten letter and is dissatisfied with the whole business." On April 20, 1931, Ephriam wrote the Register of Wills asking for a statement of receipts and expenditures to date and other information with respect to the Katherine Bevard estate, and also to the bank with reference to the mortgages held by them for the estate. On February 11, 1939, William wrote to Ephriam, "You seem to have no Idea of banking in your letter." In January and February, 1939, William sent Ephriam at least $2,000 of his share.

As to the plaintiff's claim on behalf of Ephriam's estate, in addition to the direct testimony that the account had been settled, the circumstances disclosed by the record form a reasonable basis for a finding that prior to Ephriam's death William had made settlement with him of his share in Katherine's estate.

As to both claims, I find that the existence of a balance of $10.78 in William's executor account at the time of his death is not sufficient to override all the other circumstances which point to final settlement.

I further hold that, even had I concluded that the record did not show a final settlement was made, to order an accounting at this date would be inequitable. An accounting would not be susceptible of any accurate determination, since the only records available which have any continuity are those of the bank, and they, according to plaintiff's own witness, the bank representative, are not conclusive and would give an incomplete picture. William was appointed executor in 1927. Many years have passed, and the lips of three persons who could have shed light on the administration of Katherine's estate—William, the executor, Mr. Stetson, his attorney, and Ephriam —are sealed by death. Since diligent search has not discovered the records of William or of his attorney, Mr. Stetson, the plaintiff kept no account of amounts received by him, and the correspondence introduced in evidence by him is fragmentary, any accounting which might have been ordered in this case would have been conjectural and based on admittedly incomplete and inconclusive data.

■ Having so held, it is unnecessary to deal with the question of the statute of

limitations or laches;· but it should be pointed out that it is apparent from the record that both Ephriam and Robert had considerably less than implicit confidence in William's handling of the estate, and on the showing made by the plaintiff this is not a case for application of the utmost leniency in applying the doctrine of laches.[4]

For the foregoing reasons, I find that the complaint must be dismissed as to both claims.

---

4. Major et al. v. Shaver, 88 U.S.App.D.C. 148, 187 F.2d 211.