**Lenelle DAVIS, Appellant,**

v.

**John J. CARMODY, Executor of the Estate of Edith Shaw, Decedent, Appellee.**

**No. 2371.**

Municipal Court of Appeals for the District of Columbia.

Argued May 4, 1959.

Decided Sept. 2, 1959.

Donald J. Caulfield, Washington, D. C., Bond L. Holford, Washington, D. C., on the brief, for appellant.

James M. Earnest, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellant, a registered nurse, sued appellee, as executor of the estate of Edith Shaw, deceased, for nursing services allegedly rendered by her for appellee's decedent during the latter's life. Her claim amounted to $1,708 and covered the period from July 24 to November 17, 1957, the date of decedent's death. It is not denied that appellant rendered nursing services during the period in question. The dispute is over the extent of the services.

The case was tried to a jury and at the conclusion of appellant's case the court directed a verdict for appellee except as to the sum of $160 for services rendered during the last five days of decedent's life, for which the court rendered a consent judgment in favor of appellant.[1] The court directed the verdict on the ground that appellant "had failed to produce evidence of corroboration as required by Section 302, Title 14, D.C.Code 1951 Edition."[2] Counsel for appellant questions the correctness of this ruling.

The claim of appellant covers two periods: one, consisting of nine weeks from July 24 through the week commencing September 18, 1957. During this period she was paid at the agreed rate for an eight-hour day when she claims she actually

1. Appellee, who was taking care of the affairs of the decedent prior to her death under the authority of a power of attorney executed by her, admitted that appellant had not been paid for these five days because Mrs. Shaw died before payment for this time matured and as her death revoked the power of attorney funds were not available for payment at that time. He accordingly very properly consented to a judgment for the services rendered by appellant during these five days.

2. "In any civil action * * * against the * * * executor * * * or other representative of a deceased person * * * no judgment or decree shall be rendered in favor of the plaintiff founded on the uncorroborated testimony of the plaintiff or of the agent, servant, or employee of the plaintiff as to any transaction with or action, declaration or admission of the deceased * * *."

134

worked sixteen hours daily. It should be noted that for the first eight weeks of this period she rendered statements based on an eight-hour day; for the ninth week she rendered a statement for an eight-hour day plus twenty hours overtime; for this last week the appellee, then acting under his power of attorney, paid her for this claim for overtime as it appeared on her statement.

The second period runs from September 25 through the week commencing November 6, 1957. During this period she rendered statements on the basis of a sixteen-hour day and was paid accordingly. She claims, however, that during this period she worked twenty-one hours a day.

In her complaint appellant alleged as an explanation as to why she worked the additional hours without being paid for them, that she "continued to work upon the promise of the decedent that she was going to take care of her." Her testimony concerning this supposed agreement with the decedent is explained by appellant in her testimony as follows: " * * * she [decedent] had said sometime she would see that I was taken care of" and " * * * if there was any money left, I would be taken care of." In describing the terms of her agreement with decedent she testified: " * * * Mrs. Shaw [decedent] mentioned she knew that I was putting in the extra time and not getting paid for it. But she didn't know how much money she had, although Mr. Carmody [appellee] had told her there was more than she would ever use and I would be amply reimbursed in due time. I don't know just how she meant that."

 Under the terms of our statute it was necessary that the appellant produce sufficient corroboration of her testimony before she was entitled to prevail. The courts of various jurisdictions have given different interpretations of statutes of this

character.[3] Our United States Court of Appeals in Rosinski followed the Virginia rule. After quoting from Shenandoah Valley Nat. Bank v. Lineburg, 179 Va. 734, 739, 20 S.E.2d 541, 544, wherein the Virginia Court held that the corroborative evidence need not be sufficient of itself to support the judgment, our court said: "We agree with the Virginia court. We think the statute permits a judgment based essentially on the survivor's testimony if there is other evidence from which reasonable men might conclude that his testimony is probably true."

 Two witnesses were called by appellant in an attempt to corroborate her testimony. We have examined their testimony very closely and reach the conclusion that appellant failed to meet the test set forth in Rosinski.

Affirmed.

3. An excellent summary of the various interpretations will be found in 21 A.L.R.2d 1015. The case annotated is one that arose in this jurisdiction, Rosinski v. Whiteford, 87 U.S.App.D.C. 313, 184 F.2d 700, 701, 21 A.L.R.2d 1009.